Manuel C. BLAS, and the Estate of Jose
Martinez Torres, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 15813.

United States Court of Appeals
Ninth Circuit.

Dec. 17, 1958.

Rehearing Denied Jan. 26, 1959.

Reyes & Lamorena, Agana, Guam; John A. Bohn, Richard J. Swan, Benicia, Cal., for appellants.

Perry W. Morton, Asst. Atty. Gen., Elizabeth Dudley, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., H. G. Homme, Jr., U. S. Atty., Olen W. Burnett, Asst. U. S. Atty., Agano, Guam, for appellee.

Before DENMAN, Senior Circuit Judge and POPE and HAMLIN, Circuit Judges.

DENMAN, Senior Circuit Judge.

Manuel C. Blas and the Estate of Jose Martinez Torres, hereafter appellants, appeal from an adverse judgment of the District Court of Guam in a condemnation action brought by the United States, hereafter appellee, against lands owned by appellants.

On April 11, 1949, the United States instituted proceedings to condemn certain lands in the Municipality of Barrigada on the Island of Guam, for use as the site of a village being constructed by the United States as part of a project of rehabilitation of Guamanians dispossessed during World War II. Appellants owned three parcels of land, containing 12,871 square meters, within the condemned area. The appellee offered compensation for this land in the amount of $2,155.00.

This sum allegedly represented the value of similar agricultural lands at the time of the taking. However, although appellant's land had been primarily agricultural prior to 1946, by 1949 the United States had developed the surrounding lands into a residential community, pursuant to its rehabilitation program. Appellants claimed, therefore, that they should be compensated at the going rate

for comparable *residential* lands, and the instant action ensued.

On April 8, 1957, a jury trial was commenced for the purpose of fixing just compensation. Appellant's witness, Eduardo Calvo, a real estate broker in Barrigada, testified that the land was worth $1 per square meter. His testimony is as follows:

"Judging from information that I have received and compiled, lands which were formerly agricultural and now utilized for residential purposes, * * * in Asan, Agana and Barrigada, I would say a house lot in 1949 is worth $500 which is 5,000 square feet or an equivalent to $1.00 per square meter. These are based from actual purchases which I made in 1948 in Sinajana and Agana Vista. The purchases also made in Tutujan, sold by Jose M. Cruz to Rosalia Ojeda in 1949 to Vicente Munoz, $1.00 per square meter and also the purchase from Jose M. Cruz, Lot 22-6 to Dominga S. San Nicolas. The George Washington High School was appraised by the government in 1950 at $1.00 per square meter."

There is no evidence of record that the sales relied on by Calvo involved dissimilar lands or were for some other reason not representative of fair market value.

One Bitanga, a witness for appellee, testified that the land was worth $.01 to $.02 per square meter for agricultural purposes prior to 1945. The other government witness, Woelfl, citing nine sales of allegedly similar property in 1948 and 1949 as his basis, estimated that the value of the property ranged between $.0225 and $.06 per square meter, depending on whether or not it had highway frontage.

At the close of the evidence, the lower court granted appellee's motion for directed verdict, stating to the jury:

"Opinions or evidence when presented to the jury must be based upon sufficient study and detail knowledge of the situation so that the jury would be at liberty to accept if it so desires, the conclusions of those expert witnesses. Now in this particular case, the only figure that you had before you was Mr. Calvo's testimony that in his opinion this land involved was worth $1.00 a square meter on April 11, 1949. There was no evidence of research to justify that conclusion."

Judgment for compensation in the amount of $4,870.00 was entered in accordance with the testimony of Woelfl.

■ We think the court's opinion on its face shows that it abused its discretion in taking the case from the jury and is clearly erroneous within the meaning of Chateaugay Ore & Iron Co. v. Blake, 144 U.S. 476, 484, 12 S.Ct. 731, 36 L.Ed. 510. Calvo's testimony shows not only research but sales known to him, as a real estate agent in the area for $1.00 per square meter prior to April 11, 1949 and in the District Court the United States conceded "that the testimony of the value is based upon the value of the lots on April 11, 1949, as residential, so the government is not insisting that these lots be valued for agricultural purposes." It was clear error not to submit the case to the jury.

■ Appellee further contends that Calvo's testimony should be disregarded because he testified to the value of the lands as enhanced by the nearby residential construction of the United States.

The appellee erroneously bases this contention on the statement in its brief that:

"It is undisputed that the Government was in possession of this property under a leasehold from 1946 until the institution of the proceeding to condemn the fee title to the property."

On the contrary, at the hearing the Government, while admitting the change of the use of the land from agricultural to residential, admitted there was no evidence in the record that the property was held under a leasehold, nor under any general plan to acquire the land for governmental purpose. Hence, on the pres-

638

ent record, the land should have been valued as residential at its April 11, 1949 value within the rule of United States v. Miller, 317 U.S. 369, at page 376, 63 S.Ct. 276, at page 281, 87 L.Ed. 336, that:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity."

The judgment is reversed and a new trial ordered.