UNITED STATES of America,
Appellant,

v.

**158.76 ACRES OF LAND, MORE OR LESS, SITUATE IN the TOWN OF TOWNSHEND, WINDHAM COUNTY, State of VERMONT, and Janet Hoadley Jacques, Appellee.**

No. 103, Docket 26954.

United States Court of Appeals
Second Circuit.

Argued Dec. 1, 1961.

Decided Jan. 19, 1962.

Ramsey Clark, Asst. Atty. Gen., Joseph F. Radigan, U. S. Atty., Rutland, Vt., Raymond N. Zagone and Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., for appellant.

Ralph Chapman and A. Luke Crispe, Brattleboro, Vt., for appellee.

Before SWAN, WATERMAN and FRIENDLY, Circuit Judges.

SWAN, Circuit Judge.

This condemnation action was brought by the United States to acquire title to land for flood control purposes in connection with the establishment of the Townshend Dam and Reservoir Project in the West River Basin of the Connecticut River, Vermont.[1] It was tried to a jury whose verdict awarded to Mrs. Jacques, the claimant, $53,000, a sum of $26,000 more than the estimated just compensation for her property deposited in the registry of the court at the date of taking, March 11, 1959. The appeal alleges errors in the admission and exclusion of evidence and in the instructions to the jury. No opinion was written by the court.

---

1. Authority for the project was granted by the Act of December 22, 1944, 58 Stat. 887, 892–893 and the Act of September 3, 1954, 68 Stat. 1248, 1256–1257. The latter Act also included as part of the project the Ball Mountain Dam to which reference will be made hereafter.

The condemned property owned by Mrs. Jacques was approximately 117 acres. Part of it was improved with buildings, and, prior to the date of taking, this part was used for a residence and for a tourist business; another part contained deposits of marketable gravel, which the claimant had been accustomed to sell as it lay in the ground, so that what purchasers paid her was net profit. Proof was received that the income from her gravel business averaged from $2,000 to $3,000 a year. There was also put in evidence, over objection by the condemnor, a contract dated December 30, 1958 with Savin Brothers, who took gravel from claimant's land for use in the Townshend Dam, and testimony by witness Carlton as to trucking some 20,000 cubic yards of gravel from claimant's land for use by the Perini Company in connection with the Ball Mountain Dam.[2] Witnesses for the claimant valued the condemned property as high as $80,000; those for the United States at no more than $25,000. It is well settled law that "where the government lays out a project involving the taking of lands, no increment of value arising by virtue of the fact that a particular tract is clearly or probably within the project may be added." United States v. Cors, 337 U.S. 325, at 332, 69 S.Ct. 1086, at 1090, 93 L.Ed. 1392. The opinion goes on to explain that "any increase in value due to that fact would reflect speculation as to what the government could be compelled to pay and hence in fairness should be excluded from the determination of what compensation would be just," citing United States v. Miller, 317 U.S. 369, 376–379, 63 S.Ct. 276, 87 L.Ed. 336. Stating the rule in other words, the enhanced value created by the government's need for the property is not to be considered in determining the fair market value of the property condemned. This principle has been applied in numerous cases. One very similar to the case at bar is United States v. Rayno, 1 Cir., 136 F.2d 376, cert. den.

320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 466. There land condemned for flood control contained deposits of hardpan. In reversing a judgment for the claimant, Judge Woodbury wrote, 136 F.2d 379:

"Since, on the record before us, it seems evident that Rayno's land, although not contiguous to the land flooded or the land used for the dam site, was probably within the scope of the flood control project at Franklin Falls in that it was determined that it would be taken for use in building the type of dam determined upon at the place selected, it was 'within the scope of the project from the time the Government was committed to it'. *Thus the market for hardpan created by the Government's activities at Franklin Falls cannot be considered in determining the value of the land from which it was taken.*" [Italics added.]

See also Cameron Development Co. v. United States, 5 Cir., 145 F.2d 209.

Appellant contends that the enhancement principle was violated by the refusal to exclude evidence of gravel sales directly connected with the government project. We think it was necessary in the trial carefully to separate the admissible from the inadmissible evidence of value based on gravel sales. This was not done. Appellee contends that the United States Attorney did not properly raise the enhancement point. We disagree. His objection to the introduction of the Savin Brothers contract (Appendix 37) appears sufficient, and elsewhere in the record he kept endeavoring, though without success, to get his point across.

Hence the question becomes whether the error in the admission of evidence was cured by the charge. The appellee contends that the portion of the charge set forth in the margin cured any error in the admission of evidence respecting sales of gravel.[3] Whether the charge

---

2. See note 1, supra.

3. Appellant's Appendix, page 267:
"The adaptability of the tracts for removal of gravel on a commercial basis is,

was sufficient in this respect need not be determined, since the judgment must be reversed and the cause remanded because of the admission over objection of Mr. Chatterton's testimony.

■ He prepared and was permitted to introduce a computation (claimant's Exhibit J) showing the present value of an annual income of $2,000 and $3,000 capitalized at 4, 5 and 6 per cent for a period of 40 years and also for a period of 60 years. The income of $2,000 and $3,000 per year was based on Mrs. Jacques' testimony as to her gravel business during the years 1950 to 1958 inclusive. The periods of 40 and 60 years were based on her estimate that the condemned land contained 1,200,000 cubic yards of gravel deposits, and Mr. Chatterton's assumption as to the number of years required to exhaust that amount. Appellant has stated several valid reasons why Exhibit J should have been excluded. Capitalization of income comprehends the use of a rate of return in comparable investments. See United States v. Leavell & Ponder, Inc., 5 Cir., 286 F.2d 398, 407, cert. den. 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855 (June 5, 1961). There was no testimony whatever about comparable investments. Mr. Chatterton merely used a formula from a handbook of factors for present value of an annuity of $1.00 per year. Nor was there testimony by any witness that a commercial market for gravel would persist for 40 or 60 years.

of course, affected by the quantity and quality of the gravel deposit and the present and prospective markets for the gravel. In this regard, no value may be ascribed to the claimant's property on March 11, 1959, as a reflection of the prospective market caused by the projects for which the property was taken. The law is that fair market value of the real estate is to be determined as if there were a free market without the prospect of continuation of the public

Of the other points urged by appellant, we shall discuss briefly only those which might arise again on the retrial.

■ The jury was told:

"Finally, in fixing just compensation, you may take into consideration the present purchasing power of the dollar. Necessarily, damages have to be expressed in terms of money, yet, as a medium of exchange, its value appreciates or depreciates in accordance with the rise and fall of commodity prices. So, it is proper for you to take into consideration in this case the purchasing power of money as it is today."

The reference to inflation of the dollar was a prejudicial invitation to the jury to be generous to the condemnee. The fair market value of the property must be found as of the date of taking. On the retrial no reference should be made to inflationary trends.

■ Appellant rightly contends that if the condemned land contains a mineral deposit, such as gravel, it is proper to consider this fact in determining the market value of the land as a whole, but it is not permissible to determine separately the value of the mineral deposit and add this to the value of the land as a unit.[4] The instructions on the retrial should recognize this principle.

Judgment reversed and cause remanded.

project for which the real estate had to be condemned."

4. See United States v. Cunningham, 4 Cir., 246 F.2d 330, 333; United States v. Meyer, 7 Cir., 113 F.2d 387, 397, cert. den. 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; United States v. Rayno, 1 Cir., 136 F.2d 376, 380, cert. den. 320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 466; United States v. Glanat Realty Corp., 2 Cir., 276 F.2d 264, 265.