UNITED STATES of America,
Appellant,

v.

172.80 ACRES OF LAND, MORE OR LESS, SITUATE IN MERCER COUNTY, COMMONWEALTH OF PENNSYLVANIA, and Cecelia E. Stambaugh et al.

No. 15197.

United States Court of Appeals.
Third Circuit.

Submitted June 11, 1965.

Decided Aug. 24, 1965.

Rehearing Denied Sept. 22, 1965.

Roger P. Marquis, Lands Div., Appellate Section, Dept. of Justice, Washington, D. C. (J. Edward Williams, Acting Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Robert E. Tucker, Asst. U. S. Atty., Pittsburgh, Pa., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Donald R. McKay, Cusick, Madden, Joyce, Acker & McKay, Sharon, Pa., for appellees.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

On this appeal the United States asks us to reverse a holding of the district court, based upon findings and conclusions of a board of commissioners, that enhancement in the value of certain property attributable to a nearby governmental project is includable in an award for that property when it is condemned for use in the same project.

The essential facts are not in dispute now. In 1938 Congress authorized the Shenango River Reservoir Project in Western Pennsylvania. 52 Stat. 1215. In 1957 the Chief of Engineers approved a General Design Memorandum containing overall plans and cost estimates for the project. These plans included provision for small recreational areas and limited public facilities in the immediate vicinity of the proposed dam. In 1959, Congress, acting pursuant to these plans, first appropriated funds for the project. 73 Stat. 491.

Land acquisition for the project began early in 1960. Charles and Vera Totten, the appellees here, owned a 100 acre ri-

parian tract beginning some 2,000 feet upstream from the proposed dam on the side where no recreational facilities were planned. The government negotiated with the Tottens for a fee interest in about 20 acres of their land which would be affected by flooding and for various easements over other parts of their property, aggregating about 14 acres, which would be burdened in various ways. During these negotiations the government representative assured the Tottens, in accordance with the contemplation of the government at that time, that the proposed acquisitions were the only parts of their land that would be needed for the project. Relying on this assurance, the Tottens conveyed the desired property interests to the United States for $5,100, the value declared by a government appraiser.

Shortly thereafter, the government liberalized its policy concerning the extent of public development and use of reservoir areas.[1] This changed policy resulted in a decision, first made at the local level in February, 1961, and approved two months later, to acquire the remainder of the Totten property for recreational and other public use. The Tottens were notified of this decision in October, 1961, and in January, 1962 the United States condemned their remaining 80 acres.

It is clear that the new public improvement increased the value of the Totten land. Absent the reservoir, the highest use of the property was for farming and rural residence. But as a result of that public improvement it acquired new value for waterfront residences and cottages and for recreational use under private proprietorship. The commissioners fixed alternate fair market values for the property; $18,000 disregarding the reservoir project, or $50,000 if the enhancement of value as a result of that project should be included. The commissioners also

found that this remaining 80 acres of the Totten land was not within the scope of the reservoir project at the time of the government's original 1959 commitment to it. The district court adopted the commissioners' findings and conclusions, with one minor modification of no present consequence, and entered judgment in favor of the Tottens for $50,000.

Legal principles applicable to this case are stated in Miller v. United States, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, also a controversy in eminent domain over value enhancement resulting from the very project for which the property in suit was condemned. The Court ruled that where a public project was so planned and described by the government from the outset as to disclose a probability that a particular tract or area would be required for the project somewhat later, any enhancement of value between that disclosure of probable future need and subsequent condemnation of a particular tract should not be included in the condemnation award for that property. The Court reasoned that such "enhancement" reflected speculative judgment as to what the government would soon pay for the land rather than use value to a private purchaser. In a subsequent case, the Court described such an increase in value as "a hold-up value, not a fair market value". United States v. Cors, 1949, 337 U.S. 325, 334, 69 S.Ct. 1086, 1091, 93 L.Ed. 1392. See also United States v. 158.76 Acres of Land, etc., 2d Cir. 1962, 298 F.2d 559, 560, 92 A.L.R.2d 766.

At the same time, the Miller case discussed those distinguishable situations in which land near a public project, but not indicated at the outset as probably to be included therein, is genuinely enhanced in market value by the neighboring public development. "Should the Government, at a later date, determine to take these other lands, it must pay their market

---

1. The long time chief of the Real Estate Division of the Pittsburgh District, Corps of Engineers, testified that "the present administration [the newly elected Kennedy administration] is desirous of increasing the recreational use of these res-

ervoirs and are [sic] looking toward future public use, and with that in mind, additional planning was performed in the Pittsburgh District Engineer's office * * *."

value as enhanced by this factor of proximity". 317 U.S. at 376, 63 S.Ct. at 281.

The basic issue here is within which of the categories described in the Miller opinion the present situation belongs. In our judgment, the court below properly adopted the commissioners' conclusion that in 1959 there was not such probability of future inclusion of the Totten land in the then new public project as to require disallowance of enhanced value under the Miller doctrine. At that time the possibility of project expansion across the river to include a tract beginning less than half a mile upstream from the dam might well have occurred to a perceptive landowner or prospective purchaser of land in the neighborhood. But, as has been found in this case, the thinking of the government at that time was adverse to such an inclusion and the Tottens received specific governmental assurance that their land would not be taken. These factors distinguish this case from United States v. Crance, 8th Cir. 1965, 341 F.2d 161, cert. applied for, 1965, 33 U.S.L.Week 3378, which the government cites as supporting this appeal. For in the Crance case, no overall policy or particular governmental assurance minimized the likelihood of future project expansion to include the lands in question. Cf. John L. Roper Lumber Co. v. United States, 4th Cir. 1945, 150 F.2d 329.

In sum, a purchaser contemplating the acquisition and private development of the Totten property after the 1959 initiation of the reservoir project could reasonably anticipate that he would be able to devote the land to its highest economic use, enjoying advantages inherent in the proximity of the nearby government development without serious apprehension that his land would soon be condemned. Thus, enhancement of value during this period was properly included in the subsequent condemnation award. Cf. Scott v. United States, 5th Cir. 1944, 146 F.2d 131; Blas v. United States, 9th Cir. 1958, 261 F.2d 636.

One other consideration merits mention. Once the decision to expand the project to include the Totten property was made and disclosed, any future enhancement of value would reflect only speculative judgment as to what the government would pay. This point was not mentioned or discussed by the court below or by the commissioners. Neither is it urged by the government on this appeal that anything of moment turns on it. Our reading of the record satisfies us that the commissioners arrived at the $50,000 valuation solely upon the basis of value as it increased after the initial development of the reservoir project and before it was disclosed that the government had decided to enlarge the included public recreational area. However, in future cases it should be made explicit that no enhancement of value after the probability of public taking of the property in suit has been disclosed is included in the award.

The judgment will be affirmed.