UNITED STATES of America,
Plaintiff,

v.

244.48 ACRES OF LAND, MORE OR
LESS, Situate IN WARREN AND Mc-
KEAN COUNTIES, STATE OF PENN-
SYLVANIA, and Samuel Baker et al.,
Defendants.

Civ. A. No. 11–65 Erie.

United States District Court
W. D. Pennsylvania.

March 2, 1966.

Gustave Diamond, U. S. Atty., for the Government.

Joseph Malizia, Emporium, Pa., for landowners.

WILLSON, J., District Judge.

The Jury returned a verdict in favor of the landowners in the sum of $28,-750.00 on the issue of just compensation. This land was condemned by the United States in the construction of the Allegheny River Reservoir, commonly known as the Kinzua Dam. Judgment was entered on the verdict on November 24, 1965. On December 1, 1965, the Government filed a motion for new trial. Two reasons were set forth in this motion: (1) it was alleged that the landowners did not show by market analysis any enhancement in value of the property as a result of the project, and (2) the verdict was excessive in light of the Government's testimony. However, the motion contained a third paragraph—

"The United States of America reserves the right to set forth additional reasons in support of its motion for new trial within ten days after the transcript of the proceedings haves been filed."

The Government has contended in several of these cases—in new trial motions—that it can "reserve a right" to set forth additional reasons, within 10 days after transcript has been filed. It is well to dispose of this issue at the outset because on February 8, 1966, the

Government filed what is styled a "Petition to Supplement Record." This petition when examined amounts to nothing more than an attempt to introduce into evidence matters which from the face of the petition were available to Government counsel during the trial, but which he chose not to offer as evidence during the course of the trial. Under the circumstances the attempt to now, post trial, get into the record various exhibits in existence and known to the Government prior to trial is equivalent to Monday morning quarterbacking by Government counsel other than trial counsel. For instance, as indicated in the landowners' brief, the option referred to in the petition between the Seibels and the Kinzua Land Development Company was discussed at considerable length by the Trial Judge and both counsel prior to the trial—in chambers—and also at a side bar conference during the trial. (See page 109 of Transcript). During the conference and throughout the trial, enhancement value was discussed as was the law laid down by the Court of Appeals in the Totten case, United States v. 172.80 Acres of Land etc., 350 F.2d 957 (3rd Cir. 1965). There is simply no authority at this late stage to suggest additional reasons for a new trial in the guise of supplementing the record. See Greenwood v. Greenwood, 224 F.2d 318 (3rd Cir. 1955); Baird v. Aluminum Seal Co., 149 F.Supp. 874 (W.D.Pa. 1956); and Marks v. Philadelphia Wholesale Drug Company, 125 F.Supp. 369 (E.D.Pa.1954). Especially see Demeretz v. Daniels Motor Freight, Inc., 307 F.2d 469 (3rd Cir. 1962).

Thus, the sole issue in this case, as this Court sees it, is whether the landowner is required by so-called market analysis to show enhancement in value as a result of the project; and whether the verdict was excessive. It is to be emphasized that the Government in this case now concedes that the principle of enhancement value is in this litigation, and that the landowner is entitled to some enhancement by reason of the second taking. The complaint is made, as I understand it, that no specific date of enhancement in value is shown in the plaintiff's evidence.

The evidence in this case will show, and it is now conceded by the Government, that the Kinzua Dam Project was so planned and described by the Government initially as not to take in the tract of land involved in this civil action. This tract—754-2—is the second tract of the Seibels taken by the Government in the construction of the project. The first tract on the Engineers' map is shown as No. 754. The record shows and the Government states in its brief that subsequent to the purchase of Tract 754, there was a change in the land acquisition policies of the Federal Government insofar as they related to recreational and public facilities around reservoir and flood control projects. This change of policy was published in the Federal Register on February 22, 1962, without mentioning any particular projects.

As to the first parcel, the Seibels and the Government agreed on the issue of just compensation in the year 1961. Papers were prepared and signed on December 29, 1961. However, due to a title defect, a complaint in condemnation was filed on January 8, 1962. At the time of the negotiations as to Tract 754, the owners were assured by the Government personnel that the first tract was the only one the Government would need of the landowners' property. They were assured and the Engineers' plans show that the remaining Seibel lands would not be required in the project. However, the change in policy was first disclosed on February 22, 1962, and it resulted in the condemnation of this second tract—No. 754-2—on February 23, 1965, at Civil Action No. 11–65 Erie.

As the Government's present position is understood, it now claims that the so-called option price which the landowners gave to a potential purchaser on August 12, 1963, as $10,500.00 is controlling, and that no enhancement in value is possible after that date. As far as this Court is concerned, I am frank to say that the Government's position on this issue is

unclear. It seems to me its argument is fuzzy. For instance as the trial record shows, the construction of this reservoir was long in contemplation and announced in the public press, and was the subject of general discussion among the residents in the area and elsewhere. The highest contemplated elevation as shown on the Engineers' maps for any land taking was 1365 feet prior to the change in Government plans. Tract 754 of the Seibels was between 1328′ and 1365′ shown on the contour maps, but No. 754–2 was well above the original contemplated taking. The project originally contemplated the construction of a new two-lane highway on the edge of the reservoir, but in front of this No. 754–2, which was built. Giving consideration to the original plan of the Engineers, the parcel of land now called No. 754–2 was left as a mountain projection overlooking what would ultimately be a large lake of water. Not only did the Engineers' plan show the construction of a new highway, but access roads were available to the property.

The landowner's testimony was that the highest and best use of the subject land immediately after the plans for the project were first announced was that of a site for a motel. The Government's testimony was that it was suitable as cottage sites. Even so, the highest and best use from all the witnesses was as a site which was adaptable and could be very well used for a structure or structures having considerable commercial value because of the scenic view of the surrounding mountains and reservoir. The record shows that even from the first the area was supposed to attract large numbers of tourists and travelers seeking recreation such as fishing and boating. The landowner's evidence was also that no other choice lands for private enterprise were left available, and that private enterprise would be looking for such land. The landowner's contention is that it was obvious from circulars published and distributed to the public by the Government that private enterprise would be searching for parcels

situate with a view of the dam project such as plaintiff's land possessed. In the meantime the landowner was giving consideration to the amount of enhancement of which the option is but one indication.

■ In my view this case comes squarely within United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943). The Government surveyed and set apart Tract 754, and in its plans showed that that was the only portion of plaintiff's land to be acquired in the project. Because of the proximity to the public improvement Seibel's remaining land increased in market value immediately. The Government at a later date acquired the other lands. Under Miller—" * * * it must pay their market value as enhanced by this factor of proximity." The Jury was instructed as to the principles of enhancement announced in the Miller case and the Totten case.

As the Government's contention is understood, it is that there can be no enhancement after August 12, 1963, the day of the option, and that the option price determines any enhancement. It seems to me that the answer to this proposition is that any enhancement due to the proximity of this particular land to the project occurred when the original project plans were announced, but the enhancement value in terms of money may not have been generally realized by the public and even the landowners until work on the Reservoir had commenced and attention was drawn to the location in which the instant land was left with relation to the dam. The point is that the enhancement, if any, took place immediately, but the amount thereof was not reduced to a dollar value until the jury verdict.

The Jury has answered the only issue in the case and that is what is the amount of the enhancement. The option and letters sought to be introduced by the Government are at most only some expressions of opinion as to a possible enhancement of value. It should be noticed that neither side offered the option in

evidence in the trial as expressing an opinion on value. But it should be mentioned at this point, that the landowner Seibel in his direct testimony gave a figure of $50,000.00 as the value of Tract 754–2 on the date of taking. Mr. McKenna, counsel for the Government, might very well have cross-examined the witness as to the sale price mentioned in the option, but did not choose to do so.

█ It is my view that the issue as to just compensation in this case was one particularly suited for a Jury to resolve. It heard witnesses and their description of the property and examined the exhibits including photographs and publicity releases put out by the Government and others relating to the future prosperity of the region by reason of this Government project. As is usual in such cases, the Jury brought in a verdict in an amount between the highest figure mentioned by the landowners and the lowest figure mentioned by the Government. It can be assumed that the verdict of the Jury was a bit on the high side, but the verdict brought in was well within the evidence and authorized by it. I do not see any errors of law in the case and believe that the verdict should stand. The motion is denied.