**UNITED STATES of America,**
**Appellant,**

v.

**FIRST PYRAMID LIFE INSURANCE**
**COMPANY OF AMERICA,**
Appellee.

**No. 18684.**

United States Court of Appeals
Eighth Circuit.

Oct. 3, 1967.

Rehearing Denied Nov. 2, 1967.

S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., and W. H. McClellan and Walter G. Riddick, Asst. U. S. Attys., Little Rock, Ark., were on the brief with him.

W. B. Brady, Little Rock, Ark., for appellee.

Before MEHAFFY and GIBSON, Circuit Judges and STEPHENSON, District Judge.

STEPHENSON, District Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Arkansas in a condemnation proceeding brought by the United States to acquire interests in two tracts of land in connection with the Greers Ferry Dam and Reservoir Project on the Little Red River in Cleburne

County, Arkansas. The judgment, entered on July 29, 1966, fixed the amount of just compensation awarded the landowner, Appellee First Pyramid Life Insurance Company of America (Pyramid), and included as a major element thereof the value of the property as enhanced by the Greers Ferry project itself. The Government appeals, asserting that the taking of these two tracts, one in fee and one for easement only, was within the scope of the Greers Ferry project from the time the Government was committed to it and that the District Court erred in including in its award enhancement value representing the increase in the value of this property by virtue of its location adjacent to the reservoir to be formed by the Greers Ferry Dam. Appellee Pyramid argues that the taking of these tracts was not within the scope of the original project, that this taking is a second taking and that just compensation should be determined with respect to the value of the land on the date of this particular taking which was January 17, 1961.

The two tracts in question, 244 and 244E, are located on a bluff overlooking the right or south bank of the Little Red River as it flowed prior to the construction of the dam and the filling of the reservoir pool. They are above the 491 foot contour line and with the filling of the reservoir became lake shore property with substantial value for residential subdivision purposes, a value which they would not have had but for the construction of the dam and the creation of the lake. They constitute part of a larger piece of land bought by Pyramid in 1959, after the adjacent land to be flooded by the reservoir had already been acquired by the Government.

For many years prior to the construction of the dam the nearby City of Heber Springs, Arkansas obtained its municipal water supply from the Little Red River, and the water intake and pumping facilities of the city water system were located on the south bank of the river a short distance west of what is herein referred to as tracts 244 and 244E. Inas-much as this pumping plant was located well below the minimum power pool level of 435 feet it was obvious from the beginning of the project that the city's facilities would have to be relocated if the city were going to continue to use the lake as a source of water, and there was no reason to believe that it would do otherwise. In April of 1959 the City of Heber Springs and the Government signed a contract providing for the relocation of the water intake wherein the city agreed to relocate the facility and the Government agreed to reimburse the city for the cost thereof. Later in 1959 an engineering firm employed by the city selected a site for the new intake facilities. This site, Site A, was east of the then existing intake on the reservoir shore line and in the northwest corner of what is now Tract 244. However, Site A was not approved by the State Board of Health, and in December of 1959 another site, Site B, was selected. This site was across a small valley or draw from Tracts 244 and 244E and had it been selected, none of Pyramid's shore line would have been taken. Site B was, however, for reasons having to do with the cost of construction, rejected by the Government. In January of 1960, the city, the Government and the State Board of Health finally agreed on a location for the new facility. This site, Site C, was back on the east side of the draw and only about 90 feet east of Site A, the first suggested relocation site. In the meantime, after Site A was rejected by the State Board of Health and Site B proposed, but before Site B was rejected and Site C agreed upon, Pyramid had purchased several acres of land on this bluff overlooking the south bank of the reservoir and the east bank of the aforementioned valley or draw. It is apparent that at the time of this purchase Pyramid believed that the water intake would be located on the west side of the draw and that the Government would not need to take any more land on the east of said draw where Pyramid's newly purchased land was located.

Subsequently, in February of 1961, the Government and the city altered their

previous agreement to provide that the Government would acquire tracts 244 and 244E, rather than reimbursing the city for doing so. In anticipation of this change in plans, a declaration of taking was filed by the Government on January 17, 1961 describing 2.58 acres (Tract 244) of land to be taken in fee [1] and .13 acres (Tract 244E) to be taken as a road easement to serve the pumping station.

Prior to the trial on the issue of just compensation a dispute arose between the parties as to whether the property should be valued with or without considering the substantial enhancement in value thereof caused by its proximity to the project for which it was being taken. The Government, on September 16, 1963, moved the district court to instruct the Land Commission appointed to hear the question of just compensation to exclude and disregard all evidence which reflected any effect on the value of the lands resulting from the project itself or the Government's commitment to it. In a memorandum opinion dated June 1, 1965, the district court denied the Government's motion. Subsequently the parties agreed to try the case to the court without a jury and the court's memorandum opinion was entered on June 16, 1966.

We are of the opinion that disposition of this case is controlled by United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1942) and United States v. Crance, 341 F.2d 161 (8th Cir. 1965). The *Miller* case holds that when the Government, as part of the acquisition of property for a particular project takes certain lands and then subsequently takes adjacent lands which have increased in value *because* of their proximity to the project itself and the first taking, the Government is not required to pay this "enhanced value" if the lands in question "were probably within the scope of the project from the time the Government was committed to it."

United States v. Miller, supra, 317 U.S. at 377, 63 S.Ct. at 281. In addition, giving consideration to the size of these large flood control projects and the manner in which the Government must necessarily proceed therewith, a particular tract of land is not excluded from the area of probable taking merely because it was not specifically included in the original planning of the Corps of Engineers or specifically delineated in the preliminary maps and drawings. United States v. Crance, supra.

In his memorandum opinion of June 1, 1965, to which reference is made in his memorandum opinion of June 16, 1966, which in turn was the basis for the judgment under review, Judge Henley found that:

"There can be no doubt that from the earliest concrete conception of the Greers Ferry Project it must have been obvious that when the contemplated lake filled, the City's water intake facilities would be inundated, and that new facilities on higher ground would have to be installed. It was also fairly inferable that the new facilities in all probability would be in as close proximity to the old ones as was practical, and the lands in question or adjacent lands may well have been logical choices for the new site. So in that broad sense it may be said that the acquisition of the instant lands for use by the City may have been contemplated before any Greers Ferry condemnation suits were instituted in this Court in 1957."

Thus, on the basis of these findings, which we accept as being founded on substantial evidence, it is apparent that since the water intake facilities had to be relocated and the lands in question were logical choices for the new site, they were within the probable scope of the project as a whole. Judge Henley, however, denied the Government's motion to exclude testimony and evidence on enhanced val-

[1]. The station itself was to be located a few feet north of Tract 244 on land previously acquired by the United States. However, a requirement of the State Board of Health that the city own in fee the land within a 300 foot radius of the pumping station made the acquisition of Tract 244 necessary.

ue, and awarded compensation based on enhanced value stating in his memorandum opinion of June 1, 1965, that:

> "the rule which the Government seeks to invoke presupposes the probability that the Government will take the lands in question for its own use in connection with its own project.

> While no one questions the right of the Government to condemn the Pyramid property, the fact remains that the Government has not condemned that property for its own use in connection with the Greers Ferry Dam and Reservoir Project but simply as a partial discharge of its obligation to compensate justly the City of Heber Springs for the damages to its water system resulting from the construction of the Government's project."

The doctrines announced by the Supreme Court in *Miller* and by this Court in *Crance* should not, in our view, be so narrowly construed. The fact that the Government originally contracted to reimburse the city for acquiring the land and that it ultimately acquired the land itself, for the use and benefit of the City of Heber Springs, another political entity, does not affect the applicability of *Miller* and *Crance*, which are not limited to the taking of lands by the Government for federal use only. *Miller* and *Crance* apply to takings which are, or "were probably" within the overall scope of the federal project and are related to the public purpose, regardless of whether they are used or controlled ultimately by the federal government, local political entities or private interests. See, United States v. Miller, supra; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923); United States v. Mischke, 285 F.2d 628 (8th Cir. 1961); United States v. Agee, 322 F.2d 139 (6th Cir. 1963). In this case the Greers Ferry Project, from its inception, required the relocation of the Heber Springs water intake facility and the taking of lands for that purpose was within the scope of the federal project so that the Government should not have been required to pay for any enhanced value accruing to the property because of its proximity to the project itself.

The judgment is reversed and remanded for proceedings not inconsistent with this opinion.