UNITED STATES of America, Appellant

v.

959.68 ACRES OF LAND, MORE OR LESS, SITUATE IN MERCER COUNTY, State of PENNSYLVANIA, and Arthur C. Burdette, et al.

No. 17504.

United States Court of Appeals Third Circuit.

Argued April 21, 1969.

Decided Aug. 5, 1969.

Edmund B. Clark, Atty. Dept. of Justice, Washington, D. C., (Clyde O. Martz, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Lawrence G. Zurawsky, Asst. U. S. Atty., Pittsburgh, Pa., Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Bernard Goldstone, Routman, Moore & Goldstone, Sharon, Pa. (Routman, Moore & Goldstone, Sharon, Pa., on the brief), for appellees.

Before HASTIE, Chief Judge, and FREEDMAN and STAHL, Circuit Judges.

OPINION OF THE COURT

HASTIE, Chief Judge.

On this appeal the United States is challenging part of an award made to a landowner in a condemnation proceeding.

In 1965 the United States condemned a 237 acre tract owned by the Estate of Emma McKnight for use in the Shenango River Reservoir Project. In 1957 the Chief of Engineers had approved a General Design Memorandum outlining the overall plans for the project and disclosing that the government proposed to take land up to elevation 920. Such a taking would have included 106 acres of the tract now in question, leaving the private owner with 131 acres enhanced in value by riparian status created by

the project.[1] Later it was decided to expand the project beyond original contemplation by including areas, among them the remaining 131 acres of the tract, for public recreational development and use.

Thereafter, the United States condemned the entire 237 acre tract in a single taking. The award included the value of the 106 acres determined without regard to any affect of the project itself on land value. However, the award for the 131 acres included a substantial item for enhancement of value which occurred between the 1957 disclosure of the original project design and the enlargement of the project in 1963, because it then appeared that this acreage would become lake shore property available for private development. The sole question on this appeal is whether that enhancement of value may lawfully be part of the award.

In United States v. 172.80 Acres of Land, etc., 3d Cir. 1965, 350 F.2d 957, we considered a similar award for projetc-caused enhancement of the value of another tract taken for the same Shenango River Reservoir Project. We stated the controlling legal concepts and principles in the following language.

"Legal principles applicable to this case are stated in Miller v. United States, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, also a controversy in eminent domain over value enhancement resulting from the very project for which the property in suit was condemned. The Court ruled that where a public project was so planned and described by the government from the outset as to disclose a probability that a particular tract or area would be required for the project somewhat later, any enhancement of value between that disclosure of probable future need and subsequent condemnation of a particular tract should not be included in the condemnation award for that prop-

erty. The Court reasoned that such 'enhancement' reflected speculative judgment as to what the government would soon pay for the land rather than use value to a private purchaser. In a subsequent case, the Court described such an increase in value as 'a hold-up value, not a fair market value'. United States v. Cors, 1949, 337 U.S. 325, 334, 69 S.Ct. 1086, 93 L.Ed. 1392. See also United States v. 158.76 Acres of Land, etc., 2d Cir. 1962, 298 F.2d 559, 560, 92 A.L.R.2d 766.

"At the same time, the Miller case discussed those distinguishable situations in which land near a public project, but not indicated at the outset as probably to be included therein, is genuinely enhanced in market value by the neighboring public development. 'Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor or proximity'. 317 U.S. at 376, 63 S.Ct. at 281.

"The basic issue here is within which of the categories described in the Miller opinion the present situation belongs. In our judgment, the court below properly adopted the commissioners' conclusion that in 1959 there was not such probability of future inclusion of the Totten land in the then new public project as to require disallowance of enhanced value under the Miller doctrine." 350 F.2d at 958–959.

The government now urges that we now reconsider the quoted reasoning and hold that no enhancement of value caused by the project for which land is taken can be recovered in condemnation. This contention seems to proceed from the premise that it is always probable that public projects of this type will be enlarged beyond the original proposal before they are completed. However, we think our earlier decision stated the law

1. The tract was upstream from a dam proposed as the key feature of the reservoir project. The consequent elevation of the water level would flood 106 acres and leave the remaining 131 fronting on the newly created lake.

correctly and we adhere to the position there announced.

On its facts the present case is not significantly different from its predecessor. In both cases the tracts in question were upstream from the projected dam with part of each tract below and part above the 920 level which bounded the area of taking as originally proposed. In both cases it appears that after publication of the original design representatives of the government had stated publicly and had represented to an owner of the tract in question that the 920 elevation would be the boundary of the project. In both records it appears that thereafter the incoming national administration of President Kennedy adopted a new policy of comprehensive development of recreational facilities in connection with water resources projects of the Shenango type which resulted in the theretofore unanticipated taking of the remainder of the tract in question. In both cases the trier of fact justifiably found that the project as originally conceived, designed, described and undertaken by the government was not attended by the probability that the parts of the tract in suit above the 920 level would be taken.

The earlier case differed from this one in that, after a government representative negotiating for the acquisition of the part of the tract below the 920 level assured the landowner that the rest of his land would not be needed, the landowner, relying upon that representation, sold the government his land below the 920 level for a price determined by the valuation of a government appraiser. Here, in contrast, the landowner did not voluntarily sell his land below the 920 level. Rather, after the 1963 determination that his higher land also was needed by the government, the entire tract was condemned.

However, in both cases the critical issue was whether it seemed probable when the project was announced and undertaken that it might be so developed and enlarged as to include land above the 920 level. Both records justify the trier of fact's answer to that question. Supporting such findings were the assurances given to the landowners as to the limited extent of the project. Since the issue is not one of estoppel, it is not a decisive difference that in the earlier case the owner accepted the tendered price for the lower part of his tract in reliance upon governmental assurance that the upper part would not be taken.

Finally, the reasoning which justifies an allowance of enhanced valuation is not affected by the fact that here the entire tract was actually taken at one time after the unanticipated enlargement of the project while in the earlier case there were separate acquisitions, one before and the other after the unanticipated enlargement.

The judgment will be affirmed.