### UNITED STATES of America, Plaintiff,

v.

### 119.66 ACRES OF LAND MORE OR LESS, Situate IN MARION COUNTY, STATE OF IOWA, and William L. West, et al., Defendants.

#### Civ. No. 10–88–C–1.

United States District Court,
S. D. Iowa,
Central Division.
Dec. 23, 1970.

Allen L. Donielson, U. S. Atty., Richard J. Barry, Asst. U. S. Atty., for plaintiff.

Bennett A. Webster and John Gamble, Des Moines, Iowa, for defendants.

## MEMORANDUM

STEPHENSON, Chief Judge.

1. The tract of land here involved (Tract 471) [1] was acquired by the United States by the filing of a Declaration of Taking in this Court on August 24, 1970. A controversy has arisen as to whether enhancement in value caused by the project should be considered in valuing the subject tract. In order for the Court to rule on this issue it must determine whether this land was "probably within the scope of the project from the time the Government was committed to it." United States v. Reynolds, 397 U. S. 14, 21, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1969).

2. The Red Rock Reservoir was authorized by Public Law 761, 75th Congress, 3rd Session, approved June 28, 1938 and Public Law 534, 78th Congress, 2nd Session, approved December 22, 1944.

3. The General Design Memorandum for the Red Rock project was approved by the Office of the Chief of Engineers (OCE), Washington, D. C., on November 28, 1958. The real estate portion of this memorandum estimated that 72,000 acres (36,600 Fee and 35,400 Easement) would be required for the project. The General Design Memorandum makes no mention of land being acquired for pub-

lic access. The Preliminary Master Plan was approved by OCE on August 10, 1959. The tract in controversy was not designated therein. However, the Preliminary Master Plan indicated five areas to be used for public use. With regard to two of these areas it was necessary to acquire land not contemplated by the General Design Memorandum.

4. After a preliminary master plan is approved, the District Office must submit a Real Estate Memorandum to OCE. The approved Real Estate Memorandum is the authority to acquire land, subject to appropriations.

5. Real Estate Memorandum 5A, 5B and 5C approved by OCE on November 17, 1959, June 2, 1960, and April 21, 1961, respectively, provided only for the taking of a 1.18 acre flowage easement from Tract 471. On November 7, 1961 a 1.18 acres flowage easement was acquired from the West property by direct purchase. The total acreage authorized to be acquired in memos 5A, 5B, and 5C was 77,476 acres (45,916 Fee and 31,560 Easement), or some 5476 acres more than estimated in the General Design Memorandum.

6. On February 22, 1962 a new joint land acquisition policy was published in the Federal Register. This liberalized policy contemplated the acquisition of additional properties for recreational purposes in connection with flood control projects. Authority was granted with respect to the Red Rock Project to continue acquisition under the 1953 policy.

7. On June 29, 1962 there was approved by OCE an additional 286.50 acres of land desirable for public use. Approximately 140 of these acres considered highly desirable for public use adjoins the proposed recreational development which is the center of the present controversy.

8. Supplement No. 1 to the Preliminary Master Plan was submitted May 31, 1963 and approved by OCE on October 2, 1963. Supplement No. 1 included five new recreational areas in-

1. 80 acres, more or less, owned by the Wests and known as the West property.

cluding a 100 foot right of way through Tract 471. No fee taking of the West property now in controversy was proposed.

9. Supplement No. 2 to the Preliminary Master Plan was submitted May 28, 1965 and *disapproved* by OCE on October 27, 1965. Supplement No. 2 would have allowed acquisition of the West property for a state park.

10. Real Estate Memorandum 5M describing land requirements to the Preliminary Master Plan was submitted July 22, 1965 and approved by OCE on December 21, 1965. Memorandum 5M approved a 100 foot right of way through the West property (Suppl. No. 1) but did not approve the acquisition in fee of the West property (Suppl. No. 2). On October 26, 1967 a 100 foot wide roadway easement containing 6.02 acres was acquired through the West property by direct purchase.

11. Design Memorandum No. 24B submitted January 26, 1968 and approved by OCE on May 10, 1968 contemplated the taking of the West property and other property in cooperation with the State of Iowa for state park recreational development.

12. Real Estate Memorandum 5R submitted July 15, 1968 and approved by OCE on October 25, 1968 provided authority for the acquisition of the West property.

13. In summary:

(a) The first taking from Wests, approved in Real Estate Memorandum 5B, consisted of 1.18 acres of flowage easement. This easement, designated 440E, was acquired by direct purchase on November 7, 1961.

(b) The second taking from Wests, approved in Real Estate Memorandum 5M, consisted of 6.02 acres of road easement. This easement, designated 469E, was acquired by direct purchase on October 26, 1967.

(c) The taking now before the Court, approved in Real Estate Memorandum

5R, consists of 80.0 acres (including the 1.18 acre flowage easment and 3.01 acres of the road easement). This fee taking, designated 471, was acquired by Declaration of Taking filed August 24, 1970. The sole question before this Court is whether or not defendants are entitled to the value of Tract 471 as enhanced by its proximity to the Red Rock Project.

14. The Government contends that no enhancement value should be allowed because the property now being taken was within the scope of the project from the time the Government was committed to it. United States v. Reynolds, *supra* at 397 U.S. p. 21, 90 S.Ct. 803; United States v. Crance, 341 F.2d 161 (8th Cir. 1965); United States v. First Pyramid Life Insurance Co., 382 F.2d 804 (8th Cir. 1967). Defendant landowner contends that enhancement in value should be allowed because the land in question was not within the scope of the Reservoir Project at the time of the Government's original commitment to it. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1942); United States v. 172.80 Acres of Land, 350 F.2d 957 (3d Cir. 1965); United States v. 959.68 Acres of Land, 415 F.2d 401 (3d Cir. 1969); United States v. 2,353.28 Acres of Land, 414 F.2d 965 (5th Cir. 1969).

15. The test is set out in *Miller*, 317 U.S. at p. 377, 63 S.Ct. at p. 281.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities."

16. It is the view of the Court that defendant landowner is not entitled to enhancement value because of its proximity to the project. This project from its inception contemplated recreation areas for public use around the reservoir. The Preliminary Master Plan approved by OCE in 1959 indicated five areas to be used for public use. The disputed area was not then specifically designated. It is not required that the area to be taken be specified in the initial planning stage. In United States v. Reynolds, *supra*, at p. 21, 90 S.Ct. at p. 807, the Supreme Court said:

"The rule does not require a showing that the land ultimately taken was actually specified in the original plans for the project. It need only be shown that during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use."

In a project of this magnitude detailed plans are formulated during the period of construction. The mere fact that a particular taking was not specifically delineated does not take it outside the scope of the original project. United States v. First Pyramid, *supra*, at pp. 804–806; United States v. Crance, *supra*, at pp. 164–166. The mere fact that the subject property was initially disapproved and later approved does not alter the fact that it was within the scope of the project. United States v. Pyramid, *supra*; United States v. Crance, *supra*.

The Court finds that tract No. 471 was within the scope of the project from the time the Government was committed to it. The Condemnation Commission will be instructed that since tract 471 was within the scope of the original project, there can be no allowance for enhancement of value due to the building of the dam and reservoir project. Counsel for the Government will submit a form of instruction to the Commission in accordance herewith.