**UNITED STATES of America, Plaintiff, Appellant and Cross-Appellee,**

v.

**W. R. CARROLL, Defendant, and owner of Parcel No. 56 (Declaration of Taking No. 25), Appellee and Cross-Appellant.**

No. 8536.

United States Court of Appeals Fourth Circuit.

Argued March 23, 1962.

Decided June 4, 1962.

Edmund B. Clark, Attorney, Department of Justice (Ramsey Clark, Asst. Atty. Gen., Claude V. Spratley, Jr., U. S. Atty., Franklin C. Baugh, Asst. U. S. Atty., and Roger P. Marquis, Attorney, Department of Justice, on brief), for appellant and cross-appellee.

James H. Simmonds, Arlington, Va. (John F. Carman, Arlington, Va., on brief), for appellee and cross-appellant.

Before HAYNSWORTH, BOREMAN and BELL, Circuit Judges.

BOREMAN, Circuit Judge.

This is an appeal by the United States and a cross-appeal by the property owner from an order of the District Court increasing the award of a commission appointed pursuant to Rule 71A(h), Federal Rules of Civil Procedure, 28 U.S.C.A., in a condemnation proceeding. The acquired property consists of 268.364 acres of land located in Fairfax and Loudoun Counties, Virginia, and improvements, taken for use as part of the Dulles International Airport project. It is conceded by the parties that W. R. Carroll is the record owner of the legal title to the property but Randolph D. Rouse is the true owner and real party in interest.

On April 11 and May 9, 1961, the commissioners conducted hearings at which the Government presented the testimony

of three witnesses and, for the landowner, he and six others testified. On July 11, 1961, the commission filed its award fixing just compensation for the property taken at $119,366.30. The landowner filed objections to the award but shortly thereafter the commission filed a detailed written report which, in substance, answered the owner's objections except the objection that the award was too low and thus "clearly erroneous." The commission report, after summarizing the testimony presented at the hearings, concluded as follows:

"1. That the United States acquired title to said 268.364 acres at the time of the taking, that said property was then in good condition with approximately 150 acres of marketable sod, that substantial repairs and renovations to the improvements had been almost completed at the time of the taking, and that a pond or lake had been built by the owner at a cost of approximately $3,350.00.

"2. That the highest and best use for the property was as a horse farm with future investment potential.

"3. That the fair market value of the property taken was $119,366.30 consisting of the following items even though the entire property is considered as a unit:

| | |
|---|---|
| 268.364 acres at $325.00 ... | $ 87,218.30 |
| Buildings ............... | 34,400.00 [1] |
| Pond .................... | 2,500.00 |
| | $124,118.30 |
| Less salvage value of buildings in remainders ...... | 4,752.00 |
| | $119,366.30 |

[1]. This court notes that this figure includes the value of the buildings actually taken by the United States, plus the totally depreciated value of certain other buildings on the owner's land, adjacent to the land taken, which was not condemned. The commission then took into consideration the salvage value of the buildings on the remainder and subtracted such value from the total damages allowed for the loss of structural improvements.

"4. That any enhancement in the value of the two remainder parcels was due to the general benefit to the public in the neighborhood of the Airport acquisition rather than to any peculiar benefits to the owner of the subject property."

No further objections were filed after the submission of the commission report, but in October 1961 the District Court heard arguments by counsel for both the owner and the United States on objections to the report. Thereafter, the District Judge rejected the commission's report and increased the compensation award to $132,627.80 for reasons stated in a written opinion and hereinafter set forth and discussed.

The Government raises two basic questions on appeal: (1) Whether the District Court had authority and power to substitute its own findings and conclusions for those of the commission, even assuming the commission's findings clearly erroneous; (2) whether the District Court's findings are clearly erroneous and should be set aside. The property owner, in his cross-appeal, urges that the award as increased by the District Judge is inadequate and should be further increased.

—I—

The law with respect to the first question presented by the Government was most recently discussed by this court in United States v. Certain Interests in Property, 296 F.2d 264 (4th Cir. 1961).[2] There we held:

"* * * The District Judge has the authority and duty to review the findings of the commission, and such findings must be accepted by him un-

[2]. This court had previously considered this question in United States v. Twin City Power Co., 248 F.2d 108 (4th Cir. 1957), cert. denied, 356 U.S. 918, 78 S.Ct. 702, 2 L.Ed.2d 714 (1958); United States v. Cunningham, 246 F.2d 330 (4th Cir. 1957); and Cunningham v. United States, 270 F.2d 545 (4th Cir. 1959), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed. 2d 1022 (1960).

less he considers them clearly erroneous. Upon review of the District Court's findings and judgment, we must first determine whether or not the District Judge erred in accepting or rejecting the findings of the commission. The next step is to decide whether or not the substituted findings of the Judge are properly supported by the evidence. Thus, where the evidence before the commission is in virtual equilibrium and the preponderance for one side or the other is slight, the commission's findings could not be rejected by the District Court merely because the judge preferred the opposite line of evidence, which, if accepted, would support other findings; in such a situation where the commission's findings are based on substantial, though conflicting, testimony, we would be compelled to hold that the District Court erred if the commission's findings were rejected. * * *." Id. at 269.

The Government now urges that this court should carefully reconsider and change the rule as above stated. It is emphasized that the commission members see and hear the witnesses and should thus make the final decision as to the value of the property under consideration. The thrust of this argument seems to be that the commission's findings should be accorded the weight and binding effect of a jury determination of fact. United States v. Wallace, 201 F.2d 65, 67 (10th Cir.1952), is cited for the proposition that the commission is used *in lieu of a jury*, but that case involved the question of whether the District Judge had abused his discretion in appointing a commission under Rule 71A(h) rather than permitting a jury to evaluate the condemned property as demanded by the Government. In the context in which the issue there arose, the commission having been used in lieu of a jury, the court's holding is not pertinent to the question now before us.

There is ample authority in accord with the rule of this court as set forth in Certain Interests in Property, supra.

Rule 71A(h) incorporates by reference Rule 53(e) (II), which provides that the District Court must accept the findings of a master unless they are clearly erroneous, but if there are objections to the master's report, "the court after hearing may adopt the report or may modify it or may reject it in whole or in part or may require further evidence or may recommit it with instructions." With respect to the scope of review and modification by the District Judge of a condemnation commission report, the Fifth Circuit has recently said in United States v. Tampa Bay Garden Apartments, Inc., 294 F.2d 598, 603 (1961):

"* * * We do not think the power to modify is to be narrowly construed or applied. The power to modify is a power to alter or change, and to enlarge and add to as well as to limit, restrict or reduce. The district court could have rejected the Commission's findings had they been clearly erroneous. Had this been done, the district court could have substituted its own findings based upon the evidence before the Commission. United States v. Twin City Power Co., 5 Cir., 1958, 253 F.2d 197."

Substantially this view of the District Judge's power to modify has been applied by the Second Circuit in United States v. 44.00 Acres of Land, 234 F.2d 410, cert. denied, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed. 2d 123 (1956), and by the Tenth Circuit in United States v. Waymire, 202 F.2d 550 (1953). The Government cites no cases to the contrary.

In criticizing the rule of this Circuit governing a District Court's power and authority to review and modify a commission's findings and report, the Government has overlooked that aspect of the rule which permits modification of commission determinations *only* if the District Judge *correctly* finds such determinations *clearly erroneous*. If he correctly makes such finding, the judge may then adopt one of two alternatives—remand to the commissioners with proper instructions or, if there is evidence in

the record before him from which a correct ultimate decision can be made and which does not involve a determination upon conflicting testimony of questions of fact [3] (as distinguished from a determination of an issue the resolution of which depends on informed opinion and judgment evidence), make the necessary determinations himself and enter final judgment rather than remand the case for further proceedings before the commission.

■ We have reconsidered the court's rule as stated in Certain Interests in Property, supra, in the light of the Government's arguments and the authorities to which we have been referred. No useful purpose would be served in reiterating the generally accepted principles of condemnation law as set forth and applied in the numerous cases cited by the Government since we see no conflict between those principles and the challenged rule, which rule we reaffirm.

—II—

The Government's second argument is that the District Judge erred in deciding that the commission was clearly erroneous in its findings and further erred in his substituted findings. Following the rule of review set forth in Certain Interests in Property, supra (296 F.2d 264), we have considered, in the light of the record evidence, the commission's findings and the judge's alteration thereof.

The commission found that the highest and best use of the property taken was "as a horse farm with future in-

vestment potential" [4] and that, at the time of taking, the property was in good condition with "approximately 150 acres of marketable sod." These important findings are not challenged by the Government, the landowner, or the District Judge. In its report the commission recited certain specific items (land, buildings and pond) and stated that the entire property was "considered as a unit." The commission was apparently correctly instructed to appraise the property as a whole,[5] but it did not expressly indicate in its report whether it had considered the existence of the "marketable sod" as a factor entering into the determination of the value of the land when put to its highest and best use. The District Judge concluded that the commission had failed to consider the "marketable sod" and changed the award by valuing the entire acreage taken at $200 per acre and adding $275 for each of the 150 acres of "marketable sod" included in the taking. According to the judge's computation, the land and sod should be valued as follows:

268.364 acres at $200 each . . $53,627.80 [6]
150 acres of marketable sod
   at $275 each . . . . . . . . . . . 41,250.00
   _____
   Total        $94,877.80

■ The District Judge erred in making his factual determination that the commission failed to take into consideration the sod in evaluating the land. The commission indicated cognizance of the fact that included in the property taken were "approximately 150 acres of mar-

---

3. We recognize that the District Judge is not required to accept testimony, though uncontradicted, if inherently incredible.

4. There was testimony before the commission that the land was suitable for subdivision purposes, and possibly it is this testimony on which the commission based its finding that the property had "future investment potential." Rouse testified that he had purchased the property with the intent of eventually developing it into one-to-five-acre "estates" built around a community golf course. There were no immediate plans for such development,

however, and the evidence shows that it probably would not have been economically feasible to subdivide the property for at least ten or fifteen years after taking.

5. The instructions given by the District Court to the commission are not included in the record before us. It appears, however, from certain statements made by the attorneys and commission members at the hearings and recorded in the transcripts that the commission was instructed to evaluate the property as a whole.

6. We note a mathematical error—this figure should be $53,672.80.

ketable sod" but its report is deficient in that it does not disclose whether the sod was considered in fixing $325 per acre as the value of the land taken. The judge could not correctly determine from the report that the commission failed to consider the sod; thus there is no basis for a determination by the judge that the commission was *clearly erroneous* in failing to take the sod into account. He could merely speculate as to what elements or factors the commission may have considered in determining the value of the land just as we are left to speculation and guesswork. " * * * Upon review of the District Court's findings and judgment, we must first determine whether or not the District Judge erred in accepting or rejecting the findings of the commission." United States v. Certain Interests in Property, 4 Cir., 296 F.2d 264, 269.

The commission heard testimony that the lands taken had a market value of $200 per acre but the witnesses who expressed that opinion admitted that they did not take into consideration the value of the "marketable sod." Rouse testified that the land, including the sod, was worth $775 per acre and another witness said it was worth $600 per acre, yet those same witnesses placed a value of $250 and $300 per acre on the "marketable sod" alone. Thus, according to some witnesses, the land value, *exclusive of the sod*, was almost equal to or higher than the $325-per-acre value adopted by the commission. In addition, the evidence shows that Rouse, after acquiring the farm in a run-down condition, had expended sums of money improving the quality of the 150 acres of sod by fertilizing and otherwise caring for it and that he incurred other expenses in grading, filling and preparing all of the land for the use to which it was being put—as a cattle and horse farm. Thus, there is nothing in the testimony of any particular witness or witnesses which would clearly reveal the basis of the commission's findings or whether the sod was considered in arriving at the ultimate valuation of the property as a whole.

The witnesses characterized the sod as "marketable" as did the commission in its casual reference thereto. Webster's New International Dictionary (2d ed.) defines "marketable" as "fit to be offered for sale in a market; such as may be justly and lawfully sold or bought; * * * of or pert[aining] to buying or selling; as, *marketable* value." We must assume that the witnesses who testified as to the existence and value of the "marketable sod" contemplated the separation of the sod from the soil and the sale thereof at a suitable market. Yet the commission made its unchallenged finding that the highest and best use of the entire property taken, including land and improvements, was as a horse farm with future investment potential. There is no testimony in the record to support a conclusion that the highest and best use of the property was as a farm for the growing and production of marketable sod.

The per-acre value of the land as found by the commission was well within the range of values placed thereon by witnesses, some of whom specifically considered the sod as an element of value and others who did not. These questions, however, naturally present themselves: (1) Did the commission, in valuing the land at $325 per acre, consider the sod in place as an element of value to the whole property when put to its highest and best use? (2) Did the commission take into consideration the marketable value of the sod and the possible effect of sod removal on the highest and best use of the whole property? (3) Did the commission, in determining that the highest and best use of the property taken included "future investment potential," have in mind the use of the land for the production of marketable sod or the eventual subdivision of the property for residential purposes as testified to by Rouse and other witnesses? (4) Did the commission completely fail to take the sod into consideration in determining land value?

In view of these manifest uncertainties, we conclude that only the commission can supply the answers to these

questions. The District Court could easily have required the commission to amplify, clarify and explain its report and the elements considered by it in arriving at a determination of the value as a whole of the property taken. We are of the opinion that this is now the proper course to be pursued and, to that end, we remand the case to the District Court so that it may direct the commission to reconsider, clarify and correct its report.

▅ For the guidance of the commission and District Judge, we shall review some of the principles which govern this case and, particularly, the evaluation of the land. First, the property taken should be evaluated as a whole; it is not proper to evaluate the property by appraising it for several different uses (*e. g.*, for use as a horse farm and as a sod farm) and by adding the separate "values" together to arrive at market value. United States v. Cunningham, 246 F.2d 330, 333 (4th Cir.1957) ; United States v. Wateree Power Co., 220 F.2d 226, 232 (4th Cir.1955) (dictum). Second, the most profitable use to which the land can reasonably be put in the reasonably near future may be shown and considered as bearing upon the market value. McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 80 L.Ed. 1205 (1936) ; United States ex rel. Tennessee Valley Authority v. Powelson, 138 F.2d 343 (4th Cir.1943), cert. denied, United States for Use of Tennessee Valley Authority v. Powelson, 321 U.S. 773, 64 S.Ct. 612, 88 L.Ed. 1067 (1944). Third, in arriving at market value, there should be taken into account all considerations that might fairly be brought forward and given substantial weight in bargaining between an owner willing to sell and a purchaser desiring to buy. Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236 (1934) ; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L.Ed. 934 (1924).

▅ Applying these principles, the commission should, if it has not already done so, consider the existence of the sod as a factor possibly affecting the determination of the market value of the property as a whole when put to its highest and best use. Since the only evidence in the present record with respect to the value of the cultivated sod is based upon the assumption that the sod would be removed from the land and sold as personalty, the commission may deem it necessary or expedient to take additional testimony directed toward the ascertainment of the value of the property taken, including 150 acres of cultivated sod in place, if it is found that the removal of the sod would be inconsistent with the highest and best use of the entire taking.

—III—

The District Judge disallowed the credit of $4752, which amount the commission had deducted from the market value of the property taken, as determined by it, since Rouse testified that the buildings on the remainder could be salvaged for that amount. All other witnesses who testified on the subject said the buildings on the remainder were worthless after the taking. The judge explained his disallowance of the credit thusly:

"It does not seem fair and equitable, or proper, to accept a salvage value testified to by the landowner, and especially so when it is apparent that such salvage value was arrived at by the landowner placing a much larger original value on the buildings than any of the appraisers. It is also noted that the landowner testified that considerable expense would be necessary in practically rebuilding and relocating these remaining buildings in order to recover this so-called salvage value."

▅ Rouse is an experienced builder, land developer, and director of and land appraiser for the Fairfax County National Bank. He was qualified to appraise the salvage value of his own buildings and, having done so, his testimony in that regard was properly accepted by the commission in determining the amount of compensation to be awarded. The fact that Rouse placed a higher orig-

inal value on the buildings than did the other appraisers is irrelevant to a determination of their salvage value. The other appraisers thought the buildings on the remainder had no value after the taking, but Rouse, who was certainly in a position to know, conceded that the buildings left to him had some remaining usefulness and value, albeit substantially decreased after the taking. We do not find the testimony referred to by the judge wherein the owner purportedly indicated that his estimate of salvage value would be decreased by the cost of rebuilding or relocating the buildings on the remainder. As we read the record, which includes a written, itemized account of Rouse's evaluation of the structures on his farm and the salvage value thereof, as well as the transcript of his testimony before the commission on two separate days, Rouse took into account the rebuilding and relocation costs when placing a salvage value of $4752 on the buildings in question. The judge erred in rejecting the credit of salvage value based upon Rouse's own testimony.

—IV—

■ The commission found that the construction of a pond on the condemned property had cost $3350 but that the value of the property was enhanced only to the extent of $2500 by the addition of the pond. The District Judge took the view that the addition of the pond must have enhanced the over-all property value by an amount equal to the cost. This was error. The cost of improvements does not necessarily determine the market value thereof or the extent to which the improvements enhance the value of the property to which they are added. "* * * The value of property may be greater or less than its cost; * * *. It is the property and not the cost of it that is protected by the Fifth Amendment." Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934 (1924). Thus, absent some manifest error in the determination by the commission of the extent to which the pond enhanced the value of the whole property taken, its determination must be left undisturbed. See Medsker v. Bonebrake, 108 U.S. 66, 72, 2 S.Ct. 351, 27 L.Ed. 654 (1882 term).

—V—

The owner, on his cross-appeal, argues that the District Court should have increased the award to a sum greater than $132,627.80. He refers us to and relies upon the testimony of the witnesses who appeared at his request. We have hereinbefore mentioned the opinions as to values as expressed by witnesses for both the Government and the landowner. Several sales were offered as "comparable" by the owner's witnesses indicating per-acre sales prices of $470 (including improvements) on one tract and $550 for each of three other tracts. Witnesses for the Government also testified as to "comparable sales" with prices ranging from $236 to $383 per acre, including improvements.

■ The commission was not, of course, compelled to accept and follow exclusively the testimony of the owner and his witnesses as to value and reject the opinions of other witnesses. Upon remand, the commission will have an opportunity to reconsider the award, taking into consideration all relevant evidence concerning the market value of the property taken. There is thus no need for this court to consider at the present time the sole issue presented by the cross-appeal, namely, that the commission overlooked testimony in the owner's favor and thus made an unfair award.

The judgment of the District Court is vacated and the case remanded for further proceedings consistent with the views herein expressed.

Vacated and remanded.