411 F.2d 1081
 UNITED STATES of America, Plaintiff-Appellee,
v.
1,291.83 ACRES OF LAND, MORE OR LESS, Situate IN ADAIR AND TAYLOR COUNTIES, COMMONWEALTH OF KENTUCKY, Raymond Tye Faulkner, Jr., and Cora M. Faulkner, Defendants-Appellants.
 No. 18552.
 United States Court of Appeals Sixth Circuit.
 June 6, 1969.
 
 1
 Paul R. Huddleston, Bowling Green, Ky., Huddleston & Huddleston, Bowling Green, Ky., Carl R. Watson, Campbellsville, Ky., on brief, for appellants.
 
 
 2
 Frank B. Friedman, Department of Justice, Washington, D. C., Clyde O. Martz, Asst. Atty. Gen., S. Billingsley Hill, Attys., Department of Justice, Washington, D. C., Ernest W. Rivers, U. S. Atty., John L. Smith, Asst. U. S. Atty., Louisville, Ky., on brief, for appellee.
 
 
 3
 Before PHILLIPS and EDWARDS, Circuit Judges, and KENT, District Judge.*
 
 
 4
 KENT, District Judge.
 
 
 5
 This is an appeal from a decision of the District Court sitting without a jury. The property in question was condemned on July 27, 1966, by the Government of the United States, for use in connection with the Green River Reservoir Flood Control project. The owners, Raymond and Cora Faulkner, challenge the District Court's determination that their 193 acres of land had a value of $420 per acre, or $81,060. Specifically, the appellants challenge the Court's complete rejection of evidence in support of their contention that the property should have been valued as potential homesites rather than as a farm.
 
 
 6
 The property in question is located 4.1 miles by road from Campbellsville, Kentucky. It was situated on a plateau and was in the shape of a rectangle, bounded on three sides by a paved state highway and an unpaved county road. The property had a total road frontage of 7,359 feet.
 
 
 7
 The property had been utilized as a farm at all times prior to the taking by the Government and the District Judge ruled that he would not consider evidence in regard to any other "highest and best use". 150.7 acres of the farm were used as crop land and the other 42.3 acres included a wooded ravine, farm buildings, farm yards and driveways. There was a substantial difference between the testimony as to value, as a farm, by the experts for the Government and the experts for the property owners.
 
 
 8
 The District Court unequivocally refused to consider any testimony or evidence whatsoever which related to any valuation of the property except as a farm. In the years preceding the condemnation, Campbellsville had been growing rapidly due to an influx of industry. The population increase between 1950 and 1960 was more than 100%. The appellants offered evidence to show that there had been a tremendous increase in the demand for housing, that most roads leading out of Campbellsville for a distance of five or six miles were "lined" with homes built since 1961. The appellants offered evidence that there was one subdivision, containing 40 to 50 new homes, located eight miles from Campbellsville.
 
 
 9
 Appellant Raymond Faulkner testified that he had received several inquiries as to whether he would be willing to sell parcels of his farm along the 1.4 miles of road frontage for residential building purposes. Faulkner testified that he had refused to sell the land on a piecemeal basis because he preferred to wait for an appropriate time to pursue the development of a comprehensive subdivision plan. The appellants offered in evidence a proposed subdivision plan, prepared by engineers, which would have required an expenditure of approximately $39,000 for additional roadways to permit development of the entire parcel of land. There was offered additional testimony that other property bordering on roads in the area of the Faulkner farm had been sold for homesite purposes at substantial prices.
 
 
 10
 While testimony was being offered in regard to value of the Faulkner property for purposes of subdivision into homesites the Trial Judge interrupted the testimony and after reading portions of this Court's decision in United States v. 2,635.04 Acres of Land, etc., 336 F.2d 646 (6th Cir., 1964) (hereinafter referred to as Berry) said:
 
 
 11
 "Well, it is the ruling of the Court that the evidence is not competent. I will let you put in your map, anything you want to, make any statement, to make up the record for review purposes if you care to do so, but this Court feels bound by — and I would have to do the same thing if you were trying it by jury — but I feel bound by the opinion of the Court of Appeals for the Sixth Circuit, in the case of United States v. 2,635.04 Acres of Land, situate in Allen and Barren County, Kentucky, found in 336 F.2d 646, and I will limit the value of this property to its highest and best purposes as a farm. That will be the ruling of the Court." (pgs. 179-180 of Transcript)
 
 
 12
 Appellants contend that the District Court erred in refusing to accept and consider evidence that the highest and best use of the property in question would have been as a comprehensive subdivision or for sale of parcels of property fronting upon the roads for homesites.
 
 
 13
 This Court is of the opinion that the Berry case, supra, can be placed in its proper perspective only by a review of the applicable case law relating to the issue in question.
 
 
 14
 It is settled law that the landowner is to be compensated for the fair market value of his property upon the basis of the property's highest and best use. Wilson v. United States, 350 F.2d 901 (10th Cir., 1965); United States v. Benning, 330 F.2d 527, 531 (9th Cir., 1964). The burden of proving the fair market value of the property rests with the landowner. United States v. Smith, 355 F.2d 807 (5th Cir., 1966); Fain v. United States, 145 F.2d 956 (6th Cir., 1944); United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943).
 
 
 15
 In determining value, the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future, is to be considered. United States v. Michoud Industrial Facilities, 322 F.2d 698 (5th Cir., 1963); United States v. Carroll, 304 F.2d 300 (4th Cir., 1962). That is, the highest and best use of the property can be based upon reasonable future probability. Morton Butler Timber Co. v. United States, 91 F.2d 884 (6th Cir., 1937); McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 80 L.Ed. 1205 (1936); Olson v. United States, 292 U.S. 246, 255-257, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); Benning, supra; Powelson, supra. All considerations that might fairly be brought forward and given substantial weight in bargaining between an owner willing to sell and a purchaser desiring to buy should be considered and taken into account. United States v. 60.14 Acres of Land, etc., 362 F.2d 660 (3rd Cir., 1966); United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943); Smith, supra; Carroll, supra; 29A C.J.S. Eminent Domain § 160 pp. 676-683.
 
 
 16
 However, a potential future use of condemned property should be considered not as the present measure of value but only to the extent that the prospect of demand for such use would have affected the price a willing buyer would have offered for the property just prior to the taking. Southern Amusement Company v. United States, 265 F.2d 34 (5th Cir., 1959); United States v. Meadow Brook Club, 259 F.2d 41, 45 (2nd Cir., 1958), cert. den. 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958). Olson, supra. Furthermore when considering a potential future use, it is clear that speculative and remote possibilities cannot become a guide for the ascertainment of value. United States v. Buhler, 305 F.2d 319, 328 (5th Cir., 1962); Wilson, supra; Olson, supra. This is especially the case where the creation of the potential use would require a substantial expenditure of capital. Berry, supra.
 
 
 17
 Finally, assuming that the landowner shows the existence of a potential use which does not require the expenditure of substantial capital for the development of a highly uncertain project and which is not highly speculative in and of itself, in addition to showing the physical adaptability of a property to a different use for the purpose of ascertaining fair market value, a landowner must show that a market in fact existed on the date of taking or would be reasonably likely to exist in the near future. That is, the mere physical adaptability of the property is insufficient to discharge the burden of proving the existence of a market. Hembree v. United States, 347 F.2d 109 (8th Cir., 1965). It is clear, however, that where a market for the land exists solely because of the Government's demand for it, any enhancement of the value of the property resulting therefrom is not a valid basis for compensation. United States v. 172.80 Acres of Land, etc., 350 F.2d 957 (3rd Cir., 1965), reh. den.; United States v. 158.76 Acres of Land, etc., 298 F.2d 559, 560, 92 A.L.R.2d 766 (2nd Cir., 1962); United States v. Cors, 337 U.S. 325, 334, 69 S.Ct. 1086, 1091, 93 L.Ed. 1392 (1949); Michoud Industrial Facilities, supra; Miller, supra. It also is clear that the landowner is not entitled to the increase in value of the condemned property when such increase is the result of the improvement made by the condemnor. Miller, supra; United States ex rel. and for the Use of the TVA v. 137 Acres of Land, More or Less, in Marion County, Tennessee, 406 F.2d 1283, (6th Cir. No. 18,410, February 21, 1969). In fact, when the Government, as a part of the acquisition of property for a particular project, takes certain lands and subsequently takes adjacent lands which have increased in value because of their proximity to the project itself at the time of the first taking, it is not required to pay the enhanced value of the property if said property was probably within the scope of the project from the time the Government was committed to it. United States v. First Pyramid Life Insurance Co. of America, 382 F.2d 804 (8th Cir., 1967), reh. den.
 
 
 18
 In Berry, supra, the United States condemned only a portion of the property in question for use, in the construction of a reservoir, in a flood control project. In seeking to reduce the amount of compensation to be paid to the property owners the Government offered testimony to establish that the taking actually resulted in a substantial increase in the value of the property owner's remaining acreage if said property were used as a camp site or lakeshore development. The evidence established that a substantial amount of capital would have been required to develop the land in such a manner. The evidence established that the property in question was at the top of a high vertical bluff at the edge of the reservoir (lake) in question as was much of the land in the area.
 
 
 19
 On the trial of Berry, supra, the Government conceded that there would not be sufficient demand to incorporate all of the property available for development into similar lakeshore lots. All of the testimony in Berry, supra, was presented in the presence of a jury. On appeal this Court held that the Government's proofs were highly speculative and that the potential value was too remote to have a realistic effect upon the value of the property at the time of the taking, particularly because of the substantial investment necessary for the development of the property in Berry, supra.
 
 
 20
 The facts in the instant case, as developed by the offer of proof, vary substantially from those existing in Berry, supra. Most significantly, the appellants sought to show not only the value of their property if developed into a comprehensive subdivision but also offered evidence to show its value if only that portion bordering the roads on the three sides of the property were divided into parcels for homesites, with the remainder of the property retaining its character as farm land. Furthermore, while Berry, supra, involved a trial in the presence of a jury this case was tried to the Trial Judge without a jury. Within this context the Trial Court refused to consider any testimony concerning the value of the appellants' land if developed as a comprehensive subdivision or if sold in parcels for homesites. The Court did permit the appellants to make an offer of proof for the purpose of establishing a record on appeal.
 
 
 21
 This Court is satisfied that in refusing to hear and consider evidence relating to the potential value of the appellants' property for homesites the Trial Court committed error. The language of the Supreme Court in Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934), appears to be most relevant to the situation before us. In Olson, supra, the United States instituted condemnation proceedings to acquire easements for flowage of water upon lands bordering upon Lake of the Woods in Minnesota. The issue before the Supreme Court of the United States was whether "the actual use and special adaptability of the landowners' shorelands for the flowage and storage of water, that inter alia will be available for the generation of power may be taken into consideration in ascertaining the just compensation to which the landowners are entitled." The Supreme Court said:
 
 
 22
 "Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. (Cases cited.)" pgs. 255-256, 54 S.Ct. pp. 708-709. (Emphasis added.)
 
 The Court went on to say:
 
 23
 "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value — a thing to be condemned in business transactions as well as in judicial ascertainment of truth. (Cases cited.)" p. 257, 54 S. Ct. at p. 709 (Emphasis added.)
 
 
 24
 It appears to this Court, from the record made for purposes of this appeal, that any valuation of the appellants' property based upon a comprehensive subdivision would probably be highly speculative. Not only because such development would require expenditure of substantial sums of capital but also because there did not appear, from the record as made for appeal, a demand for such a subdivision in the area in question. In so stating, this Court does not express its approval of the trial court's unequivocal refusal to consider the evidence relating to such comprehensive subdivision. Unlike Berry, supra, the trial herein was conducted before the court without a jury. While it is settled law that the trial judge has considerable discretion as to what evidence should be admitted, the federal rules and practice favor admission of evidence rather than exclusion if the proffered evidence has any probative value. Rule 43(a), Federal Rules of Civil Procedure; Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir., 1960), cert. den. 368 U.S. 890, 82 S.Ct. 139, 142, 7 L.Ed.2d 87 (1961). In particular, rules of admissibility should not be applied with the same strictness where the case is tried before the court without a jury. New York Life Insurance Co. v. Harrington, 299 F.2d 803 (9th Cir., 1962).
 
 
 25
 If the trial court had considered the appellants' comprehensive subdivision and found it too speculative we could not, on the record before us, disagree with such a conclusion. From the evidence offered, in connection with the record made for appeal, it appears to this court that serious consideration should have been given to appellants' proffered evidence relating to the potential value of the Faulkner property, abutting on the roads, for sale as homesites. Such sales would not have required any expenditure of capital and the evidence as offered indicated a demand for such homesites.
 
 
 26
 We recognize that the United States was not afforded any opportunity to offer evidence in opposition to the appellants' record on appeal. It is clear that in condemnation proceedings if evidence shows a reasonable probability of adaptability of lands for specific uses evidence regarding the value of the property for such prospective uses should be received. United States v. Waterhouse, 132 F.2d 699 (9th Cir., 1943), aff'd. 321 U.S. 743, 64 S.Ct. 484, 88 L.Ed. 1047 (1944); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).
 
 
 27
 We conclude, based upon the facts as they appear on the record on appeal, that the trial court should have received and considered testimony relating to development of the property in question. By so holding we do not conclude that the possibility of such development, either as a comprehensive plat or by parcel sale for homesites, is in fact the highest and best use for the appellants' land. That is for the trial court to determine upon hearing and considering all of the evidence in regard to that issue.
 
 
 28
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Honorable W. Wallace Kent, Chief Judge, United States District Court, Western District of Michigan, sitting by designation