Re: Assateague Island Condemnation Cases Opinion No. 4.

**UNITED STATES of America**

v.

**LAND Situated IN the COUNTY OF WORCESTER, STATE OF MARYLAND, etc.**

**Civ. Nos. 19635, 20121, 20529, 20667.**

United States District Court,
D. Maryland.

Oct. 6, 1972.

Anthony C. Liotta, Philip M. Zeidner and Stanley J. Fineman, Attorneys, Lands Division, Department of Justice, Washington, D. C., and George Beall, U. S. Atty., of Baltimore, Md., for plaintiff.

J. Hampton Baumgartner, Jr., Bruce S. Mencher, and Wilkes & Artis, Washington, D. C., for certain lot-owners.

THOMSEN, District Judge.

After the filing by this Court of Assateague Island Condemnation Cases Opinion No. 3, 324 F.Supp. 1170 (1971), most of the lot-owners in these cases who had not theretofore settled entered into settlement agreements with the Government. Of those who have not entered into settlement agreements, some have elected to have their cases tried before a jury. Others agreed with the Government to submit their cases to the Court without a jury, and a non-jury trial with respect to those tracts has been held. A declaration of taking had been filed on June 26, 1968, with respect to a few of those tracts. No declaration of taking was filed with respect to the others; they will, therefore, be valued as of the time of trial, September 1972.

The parties agreed that the Court might consider as in evidence for the purpose of the non-jury trial all evidence offered by any party at the trial, whether or not objected to, taken subject to exception or covered by a motion to strike, without prejudice to their right to object to the same or similar evidence in the jury trial scheduled for next month, and that the Court should give the several items of evidence such weight as the Court might find it entitled to.[1] They further agreed that the Court should consider as evidence in the non-jury trial all the evidence which was before the Court during the trial which resulted in Opinion No. 3.

In addition, the Government offered the testimony of several witnesses, including (1) the Supervisory Park Ranger at Assateague, (2) a registered engineer and surveyor, who testified with respect to the elevations of the several lots, (3) a consulting engineer, who testified with respect to various factors which would have affected the feasibility of developing Assateague Island if it had not been taken by the Government, and (4) a real estate appraiser, land planner and economist, who gave his opinion of the value of the tracts in question, including environmental problems, financial problems and trends in the prices of various types of water-oriented land.

Some of the lot-owners testified, and counsel for a considerable number of lot-owners produced (1) a surveyor, who testified with respect to elevations, and (2) a real estate broker and appraiser, familiar with land in Worcester County, who gave his opinion of the value of the tracts in question, based primarily upon (a) current sales of land in Ocean City, which he did not show to be comparable to conditions on Assateague Island at any time, and (b) sales at three seashore developments in North Carolina, which this Court finds not to be comparable, for reasons set out in footnote 2

---

1. Including no weight, if the Court so found. See United States v. 1,291.83 Acres of Land, etc., Com. of Ky., 411 F.2d 1081 (6 Cir. 1969); United States v. 25,406 Acres of Land, etc., 172 F.2d 990 (4 Cir. 1949), cert. den. 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738 (1949); United States v. Certain Land in the City of Fort Worth, 414 F.2d 1029 (5 Cir. 1969); United States v. Lowrie, 246 F.2d 472 (4 Cir. 1957).

in the margin[2]. The lack of comparability of the North Carolina sales used as a base by the lot-owners' appraiser destroys one of the basic premises upon which his opinion of value was based, and renders that opinion of no weight in this case.

The Court has considered all the factual evidence and the evidence with respect to the trend of values in Ocean City over the last few years, but the Court finds that the trends of sales of various types of land in Ocean City and other developed communities must be greatly discounted when the value of lots on Assateague Island is in question.

The sales of lots in Whitehall Manor, in Anne Arundel County, Maryland, cited by one of the lot-owners, are not comparable, for the reasons set out in footnote 3[3].

The evidence of sales at Topsail Beach, near Wilmington, North Carolina, offered by one of the lot-owners, is more nearly comparable, and has been considered. See footnote 4[4].

The Court adheres to the conclusions of law stated in Opinions Nos. 1, 2 and 3.[5]

The Court also adheres to the Findings of Fact in Opinion No. 3, including those adopted from the earlier opinions, except as those findings are modified by Findings 4–1 to 4–5, below. The Court makes the following additional Findings of Fact, applicable to the tracts which are being valued as of September 1972.

4.1—The Court finds there would have been sand fences along the whole ocean shore of Assateague Island by some time between early 1964 and late 1968. These fences would have slowly built up the dunes, and pressure by lot-owners on the County would probably have resulted in one road through Section C by 1968 and all the way down to the Virginia line by 1972.

4.2—The pollution problems on Assateague Island would have become more acute after 1968, in the sense that the public would have been more aware of them, especially if 100 to 200 houses had been built by that time.

The effect of these developments makes it very difficult to determine what modifications, if any, should be made in order to bring up to date Findings Nos. 37 and 48 in Opinion No. 3. All factors considered, the Court finds on the one hand that the problems would have remained, that the public would have been more aware of them, that

2. A. Sales at Whale Head Beach—(1) No evidence of any cash sale was offered. The contracts called for a down payment of 2%, the balance payable over 25 years, with interest, (2) Whale Head was near three successful developments by the same developer, with numerous houses in the other developments, (3) The sales were made during a strong advertising campaign by the developer, (4) There was no evidence that the development was troubled by high water, even after storms, and no evidence of difficulty in building septic tanks.

B. Sales at Figure 8 Island—(1) Credit or financing is available, (2) It is a prestige development, with roads and other amenities, and some expensive houses already built, (3) Sales were made during an elaborate advertising campaign by the developer, (4) There was no evidence that the development was troubled by high water even after storms, and no evidence of trouble with septic tanks.

C. Sales at Southern Shores—Factors are similar to those applicable to Figure

8 Island, except that Southern Shores is less prestigious.

3. Sales at Whitehall Manor, Anne Arundel County—(1) Financing was available, (2) Almost all lots have been sold; there are roads, and on a good percentage of the lots houses are built, being built or about to be built, (3) The sale offered in evidence was made by the sales force of the developer, (4) There is no evidence that the lots are troubled by high water even after storms, and no evidence of trouble with septic tanks.

4. Sales at Topsail Beach—(1) Sales by a private owner for cash, financing available, (2) A successful development, with roads and some houses, with water and septic tanks, (3) No evidence troubled by high water, (4) Lots much smaller, (5) The relations of commercial land to residential land is better than on Assateague.

5. 306 F.Supp. 138 (D.C. 1969) ; 311 F. Supp. 1039 (D.C. 1970) ; and 324 F. Supp. 1170 (D.C. 1971), respectively.

more governmental agencies at all levels would have become involved in efforts to protect the environment, and that the cost of fill would have increased; on the other hand, the Court finds that pressures by lot-owners on the applicable government agencies would have increased and that the general increase in land values would have tended to offset the effect of the depressing factors.

The Court adheres to the Ultimate Findings and Conclusions in Opinion No. 3, 324 F.Supp. at 1181–1182, and the valuations of Lots and Tracts as of 1968, 324 F.Supp. at 1182, 1183.

With respect to the lots and tracts which must be valued as of September 1972, the Court makes the following additional findings:

4.3—Land values on Assateague during the year after July 1968 would not have increased more than 10% of the 1968 figures determined by the Court in Opinion No. 3, which were themselves 50% above the 1963 base figures. However, the general increase in water-oriented land values during the years 1962–1972, and the issuance in 1970 of proposed regulations and in 1971 and 1972 of formal regulations under the Flood Insurance Act of 1968 would have stimulated a more rapid increase in land values on Assateague during and after 1970. The lot-owners, prospective purchasers, the State and the County would have taken a rosier view.

■ 4.4—All factors considered, the Court finds that land values on Assateague as of September 1972 would have increased 75% over the mid-1968 values found by the Court in Opinion No. 3. See 324 F.Supp. at 1182, 1183. This is equivalent to an increase of 162-½% over the 1963 values. A schedule of the September 1972 values is set out in (B) below.

■ 4.5—The modifications for elevations of less than 6 ft. above MLW, as set out in Opinion No. 3, at p. 1182, should be changed, as set out in (A), below. The figures for other additions should be changed to those set out in (C), below.

*(A) Elevations*

I. The valuations set out in (B), below, are for lots with elevations of 6 ft. or more above MLW.

II. For lots with elevations of

| | | | |
|---|---|---|---|
| 5.5 to 5.9 ft. deduct | $ | 100 |
| 5.0 to 5.4 ft. deduct | | 200 |
| 4.5 to 4.9 ft. deduct | | 300 |
| 4.0 to 4.5 ft. deduct | | 400 |
| 3.5 to 3.9 ft. deduct | | 500 |
| 3.0 to 3.4 ft. deduct | | 600 |
| 2.5 to 2.9 ft. deduct | | 700 |
| 2.0 to 2.4 ft. deduct | | 800 |
| 1.5 to 1.9 ft. deduct | | 900 |
| 1.4 and below deduct | | 1,000 |

*(B) Categories*

As indicated in (A), above, the following valuations are for lots with elevations of 6 ft. or more above MLW.

I. Ocean front
  (a) Residential
    (1) Corner lots     $13,125.00
    (2) Other     12,250.00
  (b) Commercial
    (1) Corner lot     14,875.00
    (2) Other     14,000.00

II. From the alley behind the Ocean front lots to the east side of Baltimore Boulevard.
  (a) Residential
    (1) With side on alley (first lot behind ocean front)     6,125.00
    (2) Other     5,250.00
  (b) Commercial
    (1) With side on alley (first lot behind ocean front)     7,000.00
    (2) Facing on Baltimore Boulevard or Park Lane     7,000.00
    (3) Other     6,125.00

III. From west side of Baltimore Boulevard to east side of Coastal Highway.
  (a) Residential     4,375.00
  (b) Commercial
    (1) Facing on Baltimore Boulevard or Park Lane     6,562.50
    (2) Facing on Coastal Highway     5,250.00
    (3) Other     4,375.00

IV. Coastal Highway to Bay (except Blocks 521, 531, 541, 551, which were valued in Opinion 3).
  (a) Residential     3,937.50
  (b) Commercial     none involved

*(C) Other Additions*

I. Common ownership of two or more adjacent lots.
  (a) Ocean front, $500 per lot.
  (b) Other, $250 per lot.

II. For a well—none involved.

*(D) Special Situations*

Two or three tracts have been treated as special situations.

Counsel should agree upon an appropriate judgment order.