343 F.2d 422
 J. A. TOBIN CONSTRUCTION COMPANY, Odessa Krebs, Edmond H. Krebs, Jr., Lorena Lane, nee Krebs, Nawatha Redding, nee Krebs, Jaquitah Bailey, nee Krebs, and Joseph E. Krebs, individually, and Joseph E. Krebs as Executor of the estate of Edmond H. Krebs, deceased, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 7610.
 United States Court of Appeals Tenth Circuit.
 March 5, 1965.
 Rehearing Denied April 28, 1965.
 
 F. Philip Kirwan, Kansas City, Mo. (Charles W. Medley, Kansas City, Mo., and Charles B. Tucker, McAlester, Okl., were with him on brief), for appellants.
 Roger P. Marquis, Washington, D. C. (Ramsey Clark, Washington, D. C., Edwin Langley and James J. Conrad, Muskogee, Okl., were with him on brief), for appellee.
 Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal from a judgment of the District Court affirming the action and report of a Commission appointed in a condemnation proceedings pursuant to Rule 71A(h), F.R.Civ.P., to determine just compensation for property taken for a public project. The appellants are owners of the land and the lessee-operator of a rock quarry under a lease from the landowners.
 
 
 2
 After a full hearing, the Commission found that the land had no market value as a rock quarry aside from the demand created by the public project and that the quarry did not, therefore, compensably enhance the value of the property taken. Therein lies the crux of this lawsuit; for no complaint is made of the valuation of the land taken without the quarry.
 
 
 3
 The Commission and the trial court were apparently of the view that this case comes squarely within the general rule under which values in a market created solely by the need of the taker for the property taken are not fair market values to measure constitutionally guaranteed just compensation. See: United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392; United States v. Miller et al., 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. 158 Acres of Land, 2 Cir., 298 F.2d 559; United States v. Rayno, 1 Cir., 136 F.2d 376 and Cameron Development Co., Inc. v. United States, 5 Cir., 145 F.2d 290. Thus, "where the government lays out a project involving the taking of lands, no increment of value arising by virtue of the fact that a particular tract is clearly or probably within the project may be added. * * * Any increase in value due to that fact would reflect speculation as to what the government could be compelled to pay and hence in fairness should be excluded from the determination of what compensation would be just." United States v. Cors, supra, citing Miller v. United States, supra. But, it is not quite accurate to say that property cannot acquire a constitutionally compensable value attributable in whole or in part to a public improvement. If the property was not originally included within the probable scope of the project, but the project is subsequently enlarged to include it, the Government must, of course, pay for the enhanced value which is due to the original project. See United States v. Miller, supra. So too, if land is taken outside the scope of the project to be used in connection with it, the prevailing market price at the time of the taking is the measure of just compensation. See: Harwell v. United States, 10 Cir., 316 F.2d 791.
 
 
 4
 Appellants seem not to dispute the generally applicable decisional rule for determination of just compensation in cases of this kind. They do earnestly insist, however, that the Government took an established commercial rock quarry quite apart from the Government's demand for its product, and it is, therefore, constitutionally obligated to pay just compensation, even though it was within the scope of the public project. And, if the Government did take land underlaid with rock having a market value apart from the needs of the project, it is, of course, constitutionally bound to pay for it. This is true whether the lands lie within or without the scope of the project.
 
 
 5
 The basic facts bearing on this issue do not seem to be materially in dispute. They reflect that since 1939 this tract has been known as a source of rock suitable for construction purposes. In 1939 rock was taken from this area for public use in the nearby city of Eufaula. In 1943 rock was taken by a railroad company apparently to reinforce a river embankment. There was also testimony to the effect that at various times over the years rock had been sold to individual buyers for personal use. But, no machinery had ever been installed, and sales were at most sporadic.
 
 
 6
 Early in January, 1961, Tobin learned that the Government was to request bids on the relocation and construction of Oklahoma State Highway 9 as a part of the Eufaula Dam and Reservoir Project. Tobin determined availability of suitable rock for the relocation project, and bid for a contract on the basis of its availability. It was awarded the contract about the middle of February and in April entered into a lease with the Krebs family for a period of two years, renewable for two years, without rental but providing for a per cubic yard royalty for the material removed.
 
 
 7
 Tobin commenced clearing the overburden and moving in machinery preparatory to opening the quarry. About this time, in April, the Government learned that the quarry was being located in the projected right-of-way for an interchange between relocated Highways 9 and 9-A, and representatives of the Corps of Engineers conferred with Tobin about the matter.
 
 
 8
 It seems that from the very beginning the Eufaula project contemplated relocation of both Highways 9 and 9-A with an interchange between the two, and in October of 1960 the center line of the relocated Highway 9-A was "staked and flagged for a plan-in-hand survey". The center line was surveyed and substantial stakes were driven at intervals of 100 feet and flagged so the stakes could easily be seen by anyone walking out the line of the right-of-way. Although the detailed engineering plans were not available to the public or to Tobin until bids were advertised for the 9-A project with the interchange, the blueprints from which Tobin prepared its bid for the relocation of Highway 9 showed by dotted lines that the overall plan included a relocation of 9-A with an interchange "almost exactly at the location of the quarry opened by Tobin".
 
 
 9
 When, in April, the Corps conferred with Tobin about the quarry, it was apparently concerned lest the excavations leave a hole in the right-of-way which the contractor on the interchange would be required to fill at additional cost to the Government. As a result of these conferences, Tobin temporarily ceased his preliminary operations but, since no proceedings had been commenced for the taking of the property for the right-of-way, apparently proceeded to open and operate the quarry for the performance of its contract. Based on these facts, the Commission found that from the very beginning, and certainly from the date of the conferences with the Corps in April, Tobin knew or should have known of the projected plans for the relocation of Highway 9-A and that the quarry was located in the surveyed right-of-way for the interchange.
 
 
 10
 These proceedings for the acquisition of the right-of-way for the relocation of 9-A and the interchange were commenced in September, and the Government finally took possession by court order in October. Meanwhile, i. e., from April to October, Tobin continued to operate the quarry without interference from the Government, and the Commission specifically found that Tobin was rightfully on the land under its lease and that its quarry operations during that period were not in conflict with the Government's asserted interest. The evidence shows that during this period of time Tobin quarried 50,093 cubic yards of rock, 37,000 cubic yards of which was used on the relocation project, and the remainder was sold for use in a nearby town.
 
 
 11
 In support of its contention that the tract was used and useful as a commercial quarry when it leased the land Tobin offered evidence tending to show the potential market for the rock aside from the needs of the project. But, there was also substantial evidence from which the Commission specifically found that "there was no market for an ordinary commercial quarry in the area involved at the time of taking other than for use on the Eufaula project". It concluded, therefore, that the land had no fair market value as a quarry as of the critical date of taking. The findings and conclusions are substantially supported by the evidence, are not clearly erroneous and are binding here. See: Stipe v. United States, 10 Cir., 337 F.2d 818. We agree with the Commission that Tobin established the rock quarry for the purpose of obtaining a source of materials for the performance of his Government contract, and until Tobin leased the land, there was no commercial quarry thereon and the land had no market value as a commercial quarry aside from the Government's demand.
 
 
 12
 Tobin says, apparently in the alternative, that even though the quarry had no fair market value apart from the needs of the project, the Government has nevertheless taken a thriving, profitable business which was then being operated for the convenience and economy of the Government, and that it would be "absurd" even "downright immoral" not to require it to pay just compensation. The evidence shows without dispute that Tobin erected its crusher on its lease at a cost of $33,298 and that he was forced to abandon the quarry and open another at an additional cost of $27,755. Indeed the Commission found that it sustained a loss by reason of the taking of the land, but was of the opinion that the loss was a matter of consequential damages which they had no authority to consider in a condemnation case. And, we agree.
 
 
 13
 It is true, as Tobin suggests, that "just compensation" is not wedded to market value or any other method or formula. See: United States v. Cors, supra; Harwell v. United States, supra; United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629; Sill Corporation v. United States, (10CA) 343 F.2d 411. But, "just compensation" is wedded to the morals of the market place under which it is bound to pay only for that which it takes and severance damages for that which remains. It is not bound to pay for that which it injures or even destroys as a consequence of the taking. In short, it is not bound to pay "consequential damages". See: Stipe v. United States, supra, and cases cited.
 
 
 14
 The decisive fact is that the Government did not take Tobin's business, it took only the land on which the business was situated and which, as we have seen, has no constitutionally compensable value as a commercial quarry. It follows that whatever loss Tobin sustained due to the frustration or destruction of his business did not amount to a taking of his property and was, therefore, not compensable. See: Stipe v. United States, supra.
 
 
 15
 We think the Commission correctly stated the case when it said that in moving upon the lands and erecting a quarry Tobin took a calculated risk that it would be able to quarry the rock and complete its contract before the land was taken and that it lost.
 
 
 16
 Finally, the appellants complain of the failure of the Court to follow the suggestions of United States v. Merz, supra, in its instructions and directions to the Commission concerning applicable law and the procedure for the ascertainment of just compensation. Whatever may have been the deficiencies in the Court's directions in its order constituting the Commission, there is no lack of order in the conduct of the hearing or the ascertainment of the facts and their application to the law of the case. The record shows that the Commission conducted a full and complete hearing, made extensive and detailed findings of fact and was fully cognizant of the applicable law to the ascertained facts. We can find no fault with the procedures followed, and the judgment of the Court affirming the findings and conclusions of the Commission is affirmed.