UNITED STATES of America, Appellee,

v.

124.21 ACRES OF LAND, MORE OR LESS, Situate IN JACKSON COUNTY, STATE OF MINNESOTA, et al., Appellants.

Nos. 71–1466, 71–1546.

United States Court of Appeals, Eighth Circuit.

April 3, 1972.

A. Patrick Leighton, of Moore, Costello & Hart, Saint Paul, Minn., for appellants.

Thomas L. Adams, Jr., Atty., Dept. of Justice, Washington, D. C., Shiro Kashiwa, Asst. Atty. Gen., Robert G. Renner, U. S. Atty., Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., George R. Hyde, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before BREITENSTEIN, Senior Circuit Judge,* and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from an award of $1,003 as just compensation for the leasehold interest of appellants in real estate condemned by the United States of America. The case was tried to the Court without a jury. We affirm.

The Government filed complaint in condemnation seeking three-year easements over seven parcels of agricultural land adjacent to or near the location of proposed Interstate Highway 90 in southern Minnesota, for the purpose of obtaining borrow material to be used in the construction of said highway project.[1] The complaint named as defendants the fee owners and others having interests in the properties, including appellants, who were the holders of leases from the fee owners which gave appellants the exclusive right to remove earth, gravel and other materials from said land at rates from 8 to 10 cents per-cubic-yard over a period of years. In general, the terms of the leases extended to a period of 2½ to 3 years after the Government's taking on August 20, 1970. The Government settled with the fee owners prior to trial.[2] The sole issue tried to the Court was the just compensation to be awarded appellant-lessees for the taking of their leasehold interests.

The trial court in finding $1,003 to be just compensation for appellants' leasehold interests found that as of the date of taking there was little, if any, market for borrow material in the area of the taking except for the demand created by the Interstate project, and that the award made by the Court was "the most which the evidence supports." In this appeal appellants contend that the trial court's finding that no demand, or at best, nominal demand existed for the type of borrow material involved, indicates that the Court erroneously concluded that appellants were required as a prerequisite to recovery to establish a market for all or substantially all of the material being condemned,

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. The right-of-way for the highway had been obtained prior to the date of this proceeding.

2. The docket entries indicate substantial sums were paid the fee owners for the easements obtained.

separate and apart from the project itself. They cite State Highway Commission v. Fegin, 2 Mich.App. 698, 141 N. W.2d 312, at page 315 (1966) where it is said:

"We do not believe it is necessary to establish that a market exists warranting commercial exploitation of the materials. We deem it sufficient to say that if occasional demand from the contractors, and county road commission has established a general price in the area, there is a market apart from that created by the project itself.

"The appellee's appraiser testified that from both open pits and from pits they opened up whoever bought sand in this area paid 3¢ per yard and up. This is enough."

■ On the other hand, as appellee contends, under controlling federal law the Government is not required to pay for value created by its project. United States v. Miller, 317 U.S. 369, 379–380, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. First Pyramid Life Ins. Co. of America, 382 F.2d 804, 806 (CA8 1967). The enhancement principle extends beyond the scope-of-the-project situation. It also reaches other increments in value created by the project. United States v. Cors, 337 U.S. 325, 333–334, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949); Hembree v. United States, 347 F.2d 109, 111 (CA8 1965); J. A. Tobin Construction Co. v. United States, 343 F.2d 422 (CA10 1965); United States v. Whitehurst, 337 F.2d 765, 771–772 (CA4 1964). However, it is likewise the law that if the material taken by way of easement for borrow purposes had a market value apart from the needs of the project, the Government is bound to pay for it. *Tobin, supra,* 343 F.2d at 424. But there must be some objective support for the future demand. Mills v. United States, 363 F.2d 78, 81 (CA8 1966).

It is the substance of appellants' claim that they are not seeking any enhancement in value here because of the project. They are asking that the prices paid by the State of Minnesota to the owners for similar material be recognized as the fair market value of the materials covered by their leases and that they be awarded compensation accordingly. A review of the evidence is necessary to a resolution of their contention that the Court erred in finding there was little, if any, market for the materials covered by the lease except that created by the demands of the project.

■ Appellants' evidence in its case in chief consisted principally of the testimony of appellant and co-owner of one of the leases condemned, and president of G. A. Olson Construction Co., Inc., a member of a joint adventure [3] which owned the other six leases condemned. In brief, Olson testified that he had had occasion to buy or sell borrow material of the type found in the condemned properties and that he was generally knowledgeable as to the sales or purchases of borrow material in the area. Based on test borings of the property in question he expressed the opinion that the value of the borrow material was at least 12½¢ per-cubic-yard at the time of taking. Olson then gave his opinion as to the fair market value of each of the leases condemned which totaled $16,750. In general he arrived at these values by computing the bonus [4] value of the leases based on the per-yard price differential between 12½ cents per-cubic-yard and the amount due the fee owners under the 7 leases which varied from 8 cents to 10 cents per-cubic-yard. The total cubic yards to be taken from each borrow area under the project plans,

3. The other member of the joint adventure was appellant, Brown and Leguil, Inc.

4. As applied here, leasehold value exists only if there is a so-called "bonus value" to the lease. See, 4 Nichols, Eminent Domain (3d ed.) § 12.42 [3] at p. 12–518.

which is not in dispute, was used by him in making his computations as to value. Appellants also offered into evidence leases entered into by the State of Minnesota wherein the state purchased similar road building material for 12½ cents per-cubic-yard. Three of the leases involved materials located in other counties some 50 miles away and one was within a mile of the parcels in question.[5]

The Government offered the testimony of two experts as to value. Donald Douglas, an appraiser who had been employed by the Minnesota Highway Department of 6 years, appraised the fair market value of the entire easement taken by the Government and also the fair market value of the leasehold interests now in dispute. He found the latter to be the amount paid therefor by appellants or $1003. It was his conclusion that the demand for the type of material to be removed from the borrow area was "occasional and not very heavy." He indicated he had not taken into consideration the purchase of borrow material by the State of Minnesota within one mile of the parcels in question for 12½ cents per-cubic-yard because it was used on this same project and it was a purchase by the Government. He testified that in his appraisal of the overall value of the easements he considered the borrow material had a value reasonably close to 10 cents per-cubic-yard. It was his opinion that anything in excess of the amount paid by appellants to the fee owners for borrow material under their leases would be a special benefit given to it by the building of the federal highway and thus he excluded it from his consideration of value.

The other appraiser, Glen Jensen, had had several years experience as an appraiser of all types of properties with primary emphasis on agricultural properties, including extensive experience on right-of-way appraisal. He appraised the value of the easements taken on each of the seven parcels and also the value of appellants' leases. He expressed the opinion that appellants leasehold interest had no value "because they involved the removal of dirt and/or embankment material for which there is no market." He further testified that the material to be used was available on almost every farm and due to transportation cost, one would only purchase such material close to the place where he was using it.[6]

Other evidence indicated that: There was no merchantable quantity of gravel in the borrow areas, it was primarily fill dirt; this interstate project required an abnormal amount of fill dirt for overpasses; generally, the county highway departments obtained fill dirt needed within the right-of-way itself; the general cost of transporting dirt was six cents per-cubic-yard per mile; appellants' leases required them to leave the excavated area in a satisfactory condition and some of the leases required owner approval of the embankment excavated; although appellants' leases were in effect from 2½ to 4 years prior to the Government's taking, no material was sold or removed from the parcels under lease during this period.

We are satisfied from our review of the record that the evidence amply supports the trial court's finding that there "was either no demand or, at best, only a nominal demand at the location of these seven parcels except for the demand created by the Interstate." It is our further conclusion that the record supports the trial court's finding that the fair market value of appellants' interests was $1,003. See, Fed.Rules Civ. Proc. Rule 52(a), 28 U.S.C.A.

Affirmed.

5. The trial court found that "his citation of examples of claimed comparable sales was less than impressive for one reason or another."

6. The trial court noted that "He was a very credible witness."