**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**WEYERHAEUSER COMPANY, a Washington Corporation, and Crown Zellerbach Corporation, a Nevada Corporation, Defendants-Appellants.**

**No. 75–1301**

United States Court of Appeals,
Ninth Circuit.

June 14, 1976.

**1364**

Manley B. Strayer (argued), Portland, Or., for defendants-appellants.

John J. Zimmerman, Atty., Washington, D.C. (argued), Civ. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

OPINION

Before WALLACE and KENNEDY, Circuit Judges, and BOHANON,* District Judge.

WALLACE, Circuit Judge:

The United States brought a condemnation action against Weyerhaeuser Company (Weyerhaeuser) and Crown Zellerbach Corporation (Crown) to secure an easement over portions of an existing forest access road used for hauling timber. Weyerhaeuser and Crown had been receiving payments from the government for use of the road in the removal of federal timber. They claimed that just compensation includes an element of value arising from the expectancy of continued government payments for use of the road for timber removal. The district court segregated this issue for separate trial pursuant to Rule 42(b), Fed.R. Civ.P., and rejected the claim that such value should be considered. The district judge also declared that the issue involved a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal of this interlocutory order might materially advance the litigation. We agreed and, pursuant to 28 U.S.C. § 1292(b), granted the petition of Weyerhaeuser and Crown for leave to appeal. We affirm.

Weyerhaeuser and Crown own large amounts of timberland in the Molalla watershed area of Oregon. The only other substantial owner is the United States. The government granted these lands to the Oregon and California Railroad in 1866. They were subsequently revested in the United States as unsold lands pursuant to the Chamberlain-Ferris Act. Act of June 9, 1916, ch. 137, 39 Stat. 218. In 1937, Congress declared that these lands were to be managed as part of a "sustained yield timber program" for the benefit of dependent communities. Act of August 28, 1937, ch. 876, Title I, § 1, 50 Stat. 874 (codified as 43 U.S.C. § 1181a). In order to protect water-

---

* Honorable Luther L. Bohanon, United States District Judge, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

sheds and maintain economic stability in the area, long-term federal timber yields were guaranteed by limiting the maximum harvest to the volume of new timber growth.

Successful management of the government timber program is complicated by intermingled ownership of the land in a checkerboard pattern. The government timber is essentially landlocked in this area. Access was provided in the 1940's when the 28-mile Molalla Road was constructed. Except for one mile, it was financed and built by Weyerhaeuser, Crown and their predecessors in interest. Eight miles of the road cross government lands. It is the remaining 20-mile portion owned by Weyerhaeuser and Crown which is the subject of this action.

The United States granted Weyerhaeuser, Crown and their predecessors fixed term permits to build the road across the government land. By the time the permits had expired, the Department of the Interior had adopted new regulations governing such arrangements. 43 C.F.R. §§ 115.154 et seq. (Supp. 1952), as amended, 43 C.F.R. §§ 2812.0–3 et seq. (Supp. 1975). One purpose of the new regulations was to prevent monopolization of access to federal timber lands. To effectuate that purpose, the regulations provided that the Bureau of Land Management (BLM) may refuse permits to private timber owners to cross federal lands unless reciprocal permits for use of private roads are obtained. 43 C.F.R. § 115.162 (Supp. 1952), as amended, 43 C.F.R. § 2812.3 (Supp. 1975).

New agreements governed by these regulations were negotiated in 1953 to expire December 31, 1973. The agreements granted the government and its licensees and Weyerhaeuser and Crown reciprocal non-exclusive licenses over the portions of Molalla Road on their respective lands. In addition, the government was to pay Weyerhaeuser and Crown road use fees based on quantities of timber removed over the road and the distance hauled. The agreements expressly provided that no interest in the land was created and that the payment of road use fees was not a contribution to the construction costs of the road. The district judge found that in 1953 the parties assumed most of the timber would be removed by 1973, but that it is now probable that a significant volume of federal timber remains to be removed over the road. The government acquired no vested right to use of the road after expiration of the agreements.[1]

Nineteen months before the expiration of the last road use agreement, the federal government condemned a perpetual easement in the roadway. The condemnation reserved to Weyerhaeuser and Crown the right to free use of the road subject to payment of proportional maintenance expenses and permitted them to continue collecting the road use fees provided for in the prior agreement until it expired.

In support of their claim that the condemnation award should include compensation for the probable receipt of future payments for government use of the condemned road, Weyerhaeuser and Crown ar-

---

1. The permits in question do not themselves create any property interest. We have held that revocation of such permits does not give rise to Fifth Amendment liability. *United States v. 87.30 Acres of Land,* 430 F.2d 1130 (9th Cir.1970); *Acton v. United States,* 401 F.2d 896 (9th Cir.1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 1003, 22 L.Ed.2d 128 & 395 U.S. 945, 89 S.Ct. 2018, 23 L.Ed.2d 463 (1969); cf. *United States v. Rands,* 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967). Recently the Supreme Court said, in relation to Taylor Grazing Act permits:

[T]he Government as condemnor may not be required to compensate a condemnee for elements of value that the Government has cre-

ated, or that it might have destroyed under the exercise of governmental authority other than the power of eminent domain. *United States v. Fuller,* 409 U.S. 488, 492, 93 S.Ct. 801, 804, 35 L.Ed.2d 16 (1973). In the case before us the granting of these permits and the renewing of the agreements is in the discretion of the BLM and the Secretary of the Interior. 43 U.S.C. § 956; 43 C.F.R. § 2812. 6–1(a) (Supp. 1975). This case is thus distinguishable from claims for compensation arising out of renewal interests in leases. See *Alamo Land & Cattle Co. v. Arizona,* 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976); *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973).

gue persuasively that a willing buyer would pay a substantial price for that expectancy. The district court found, and there is little doubt, that absent condemnation a new road use agreement would have been signed. Substantial amounts of federal timber remain for harvesting in the Molalla watershed area. Although the government is not bound to use Molalla Road, the regulations governing road use permits for these timberlands establish a preference for the use of existing roads when such roads are of sufficient capacity. 43 C.F.R. § 2812.0–6(a) (Supp. 1975). In addition, it appears that in this case the government will be obliged, pursuant to the sustained yield program, to harvest federal timber in the region on a continuing basis for some time in the future. 43 U.S.C. § 1181a.

■ Despite the probable continuing government road use, the question remains whether this expectation is compensable. The essence of "just compensation" guaranteed to Weyerhaeuser and Crown by the Fifth Amendment is fairness. *See United States v. Cors,* 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949). Just compensation has often been said to be the fair market value of the property taken, or what a willing seller could receive from a willing purchaser. *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 474, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973); *United States v. Miller,* 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943). Fair market value takes into consideration

> [t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future . . . to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

*Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934).

Weyerhaeuser and Crown contend that pursuant to *Olson,* they must be compensated for the increment in value resulting from anticipated government road use payments. The fair market value standard does not, however, compel consideration of all possible factors which might enhance the value of the property condemned. *United States v. Fuller,* 409 U.S. 488, 491, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973); *United States v. Miller, supra,* 317 U.S. at 374, 63 S.Ct. 276. A property's special adaptability to an owner's needs and its special value to the condemnor are elements which have been excluded in order to render the assumed market free from unfair influences. *United States v. Cors, supra,* 337 U.S. at 333, 69 S.Ct. 1086; *United States v. Miller, supra,* 317 U.S. at 375, 63 S.Ct. 276; *see United States v. Chandler-Dunbar Water Power Co.,* 229 U.S. 53, 76, 33 S.Ct. 667, 57 L.Ed. 1063 (1913).

The Supreme Court has recognized the existence of a "principle which excludes enhancement of value resulting from the government's special or extraordinary demand for the property." *United States v. Cors, supra,* 337 U.S. at 333, 69 S.Ct. at 1091. In *Cors* the government had requisitioned a tugboat during World War II pursuant to a statute requiring payment of "just compensation." The government's wartime need for such vessels and its requisitioning program had driven up the market price. The Court of Claims awarded compensation based upon this enhanced market value. The Court recognized that fairness precluded the payment of "hold-up value" created by the emergency needs of the government. *Id.* at 333–34, 69 S.Ct. 1086.

■ Weyerhaeuser and Crown contend that the *Cors* "special or extraordinary demand" standard applies only to emergencies or unusual events. Thus they argue that no "hold-up value" is sought here, there being nothing, in their view, special or extraordinary about the government's need in this case. This is too narrow a reading of *Cors.*

The Court in *Cors* stated the general principle that "[i]t is not fair that the government be required to pay the enhanced price which its demand alone has created." 337 U.S. at 333, 69 S.Ct. at 1091; *see Carlstrom v. United States,* 275 F.2d 802, 808–09 (9th Cir.1960); *J. A. Tobin Construction Co. v. United States,* 343 F.2d 422 (10th Cir.), *cert. denied,* 382 U.S. 830, 86

S.Ct. 70, 15 L.Ed.2d 74 (1965); *United States v. Michoud Industrial Facilities,* 322 F.2d 698, 708–09 (5th Cir.1963), *cert. denied sub nom. Board of Commissioners v. United States,* 377 U.S. 916, 84 S.Ct. 1180, 12 L.Ed.2d 185 (1964); *United States v. 158.76 Acres of Land,* 298 F.2d 559 (2d Cir.1962). The focal point of the "special or extraordinary" standard is that values resulting from the urgency or uniqueness of the government's need for the property or from the uniqueness of the use to which the property will be put do not reflect what a willing buyer would pay to a willing seller. While we do not agree with the government's contention that any need it may have is special or extraordinary, it is clear that government projects may render property valuable for a unique purpose. Value for such a purpose, if considered, would cause "the market to be an unfair indication of value," *United States v. Cors, supra,* 337 U.S. at 333, 69 S.Ct. at 1091, because there is no market apart from the government's demand.

In the case before us the district court found that the government has been and will be the only road use customer:

> [T]he government is the only participant. Apparently defendants have never exacted fees for use of the Molalla Road from any party except the government. There is some timberland in the Molalla Watershed owned by third parties, but it is relatively small and there is no reasonable probability that a harvest of those lands would require use of the condemned roads.

Our brothers of the Fourth Circuit were faced with a similar fact situation in *United States v. Whitehurst,* 337 F.2d 765 (4th Cir. 1964). There, the property owner had a truck farm next to a naval air station. The government bought from the landowner extensive amounts of sand for construction of runways. When the United States condemned part of the land (including the sand pit) in order to extend the runways for jet traffic, the landowner contended that a portion of his land should be valued as a sand pit. The court found that the pit's only customer had been and would be the government and said:

> Mere physical adaptability to a use does not establish a market. *In ascertaining the demand, the requirements of the Government for the project for which the land is taken must be totally excluded.*

*Id.* at 772 (footnotes omitted; emphasis in original). The court also refused to permit government purchases of sand for the original project to be admitted as evidence of a market for use of the property as a sand pit. The fact that the naval air station did not originally intend to extend the runways onto the condemned land (as here the timber management project did not originally contemplate seizure of the road) did not change the result. In the case before us, "the requirements of the Government for the project for which the land is taken" are precisely the future uses of the road for which Weyerhaeuser and Crown now seek compensation.

We find *Whitehurst* persuasive and see no reason to create an inter-circuit conflict. No other potential purchasers of Molalla Road could have been anticipated road use customers; certainly the government is the only participant in the market with a need for access for the erosion prevention, sustained yield harvesting and public recreation purposes embodied in the sustained yield program. 43 U.S.C. § 1181a. As the BLM regulations recognize, ready access to these timberlands is pivotal to the economic success of the sustained yield program. 43 C.F.R. §§ 2812.0–6(b), (c) (Supp.1975). These facts bring this case within the scope of the *Cors* decision. We therefore agree with the district court that the case presents a "special or extraordinary" situation or "an element of value which the government has created" and that a fair market would not include that value arising from the government's activity.

AFFIRMED.